Jack M. PASSAILAIGUE and Mary F. Passailaigue

v.

UNITED STATES of America.

Civ. A. No. 944.

United States District Court
M. D. Georgia,
Columbus Division.

Dec. 5, 1963.

Hatcher, Stubbs, Land & Rothschild, Columbus, Ga., for plaintiff.

Floyd M. Buford, U. S. Atty., and Sampson M. Culpepper, Asst. U. S. Atty., Macon, Ga., for defendant.

ELLIOTT, District Judge:

This is an action for recovery of federal income taxes and interest paid thereon in a total amount of $3,737.91 claimed to have been illegally and erroneously assessed and collected from Petitioners for the calendar years 1959 and 1960. This Court has jurisdiction of the matter under the provisions of § 1346(a) of Title 28 of the United States Code. This opinion is intended as compliance with the requirements of Rule 52 of the Federal Rules of Civil Procedure.

All of the pertinent facts relative to the issue in this case have been fully stipulated by the parties and these facts may be summarized as follows. In May, 1958 a parcel of real estate consisting of land and improvements thereon located at 1227 Sixth Avenue, in Columbus, Georgia (hereinafter referred to as "the property"), was purchased by the Taxpayer, Jack M. Passailaigue.[1] After the date of purchase the Taxpayer rented the property to Moffett Medicine Company for $250.00 per month for at least six months.

On or about January 1, 1959 Youth Craft Shop, Inc. (hereinafter referred to as "Youth Craft") occupied the property under an oral lease entered into between it and the Taxpayer. On February 1, 1959 a written lease agreement was entered into between Youth Craft and the Taxpayer whereby the former leased the property under terms and conditions set forth therein without any obligation to pay rent. The oral lease had been without rent and similar in terms to the written lease. Youth Craft occupied the property during all of 1959 and 1960 under the terms of the lease agreement.

The lease contained the usual provisions found in agreements establishing the landlord and tenant relationship with respect to commercial properties except that it provided that, "Tenant shall use said premises solely for the charitable, educational, and eleemosynary purposes for which Tenant was organized and chartered" and further that, "Tenant shall not pay to Landlord any sums as rental for the use, occupancy and rental of said premises, it being the intention of the parties to this contract that Landlord hereby gives the use, occupancy and rental to said Tenant, but Tenant shall be bound by all of the other provisions of this contract." And it was further provided that the period of the lease would begin on February 4, 1959 and would run for an indefinite period—until such time as Landlord desired to retake possession of the premises and evidenced such desire to terminate the lease by giving Youth Craft 15 days written notice that the occupancy and use by Youth Craft was to terminate.

In 1958 Youth Craft was incorporated as a charitable corporation by order of the Superior Court of Muscogee County, Georgia, and on December 11, 1961

[1]. Mary F. Passailaigue is a party herein only because joint returns were filed for the periods at issue, thus all singular references to the Taxpayer herein will refer to Jack M. Passailaigue.

Youth Craft was granted a tax exempt status under § 501(c) (4) of the Internal Revenue Code of 1954. Youth Craft was at all times operated and conducted in accordance with the terms and for the purposes set forth in its charter and, as heretofore noted, the lease which was entered into between the Taxpayer and Youth Craft provided that Youth Craft should use the property only for the charitable, educational and eleemosynary purposes for which it was organized.

On their joint income tax returns for the calendar years 1959 and 1960 the Taxpayers deducted $2,400.00 each year as a charitable contribution to Youth Craft, this sum representing Taxpayer's estimation of the fair rental value for the use of the property. It has now been stipulated that during the years 1959 and 1960 the property had a fair rental value of $2,250.00 per year.

Agents of the Internal Revenue Service audited the returns filed by the Taxpayers for 1959 and 1960, and as a result of that audit the Commissioner of Internal Revenue determined that the charitable deduction claimed by them for allowing Youth Craft to use the property was improper. Accordingly, he disallowed the deduction and on April 13, 1962 assessed the tax deficiency against them, $1,661.21 and $2,071.70 for the calendar years 1959 and 1960, respectively. On April 19, 1962 the Taxpayer paid the deficiency assessments and on May 22, 1962 filed timely claims for refund for the two years. On November 15, 1962 the Taxpayers executed a Form 2297 agreement waiving the statutory notification of disallowance of the claim for refund and this suit was thereafter timely filed by the Taxpayers.

The sole question for determination by the Court is whether the Taxpayer is entitled to deduct as a charitable contribution under § 170 of the Internal Revenue Code an amount representing the value of the use of the real estate by the charitable corporation.

Section 170(a) (1) of the Internal Revenue Code of 1954 provides for the allowance of a deduction for " * * * any charitable contribution * * * payment of which is made within the taxable year." Section 170(c) defines a "charitable contribution" as a contribution or gift to or for the use of certain types of organizations. It is clear that Youth Craft is one of those types of organizations. Therefore, the issue turns on whether there was or was not a charitable contribution made within the taxable year as contemplated by the statute.

It is the Taxpayer's contention that the lease of the property to Youth Craft by which the enjoyment and use of the property was granted to Youth Craft free of any rental constituted a charitable contribution to Youth Craft, the value of which was $2,250.00, the annual fair rental value for each of the years 1959 and 1960. It is the contention of the Commissioner that this grant of the use of the property does not satisfy the requirements to come within the classification of a charitable contribution as contemplated by the Code.

■ Under the terms of the 1939 and 1954 Revenue Codes there has never been any doubt that payment of the charitable contribution need not be in cash, but can be in property, and gifts of property have been upheld as charitable contributions in innumerable cases. Further, the Treasury Regulations under the 1954 Code, § 1.170–1(c), state: "If a contribution is made in property, other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution * * *."

■ The Commissioner contends in this case that since the Taxpayer did not part with the title to his property, but instead granted the use and enjoyment of the property under the terms of a lease, that no gift was made, and, to use the Commissioner's phrase, "It was merely the granting of a privilege."

The Taxpayer, on the other hand, contends that it is immaterial that the title to the property was not transferred, that

the lease arrangement transferred the valuable right to use the property, and the value of such use being readily determinable, such value is deductible as a charitable contribution.

It appears that in 1948 the Commissioner of Internal Revenue issued the following ruling narrowly construing the language of § 23(*o*) of the Internal Revenue Code of 1939 (I.T. 3918, 1948–2, Cum.Bull. 33):

> "It is the view of this office that permission to use and occupy property granted to an organization described in § 23(o) of the Code does not represent a payment made to or for the use of the organization within the meaning of that section. Such an arrangement does not constitute a gift of property. It is merely the granting of a privilege for which no charge is made."

It further appears that in at least two cases subsequently decided the Tax Court has not agreed with the view expressed by the Commissioner of Internal Revenue. In Priscilla M. Sullivan v. Commissioner of Internal Revenue, 16 T.C. 228 (1951), the Taxpayer by deed conveyed to the American Red Cross certain land to be used by it for its charitable purposes "until the termination and cessation of the state of war now existing between the Government of the United States of America and the Governments of Germany, Italy and Japan by treaty of peace or otherwise." Later, in computing her income tax, the Taxpayer deducted as a charitable contribution the rental value of the property in question. The Tax Court held that she was entitled to do so even though the transfer of the property was made subject to the right of the Taxpayer to reclaim the property upon the termination of the then existing hostilities. The Court observed that the Taxpayer had made a gratuitous transfer and that she was entitled to a charitable deduction measured by the fair market value of her gift which the Court describes as a "property interest". It is true that in the body of its opinion the Tax Court observed that the Red

Cross did not take the property as a tenant from month to month or from year to year, pointing out that the transfer was of an immediate irrevocable interest in the property, but this comment of the Court was directed not at the question whether the charitable gift had or had not been made but was in response to the contention made by the Taxpayer that she had made *annual* gifts measured by the rental value of the property for each year and the Tax Court did not agree with this, holding instead that she had made *one* gift in the year in which the deed was executed. It was in connection with this feature that the Court observed that the transfer had not been by lease.

In Mattie Fair v. Commissioner of Internal Revenue, 27 T.C. 866 (1957), the Taxpayers owned a two-story building which had been constructed with a view to subsequent expansion, the walls and columns being adaptable to the addition of several stories above the existing building. The Taxpayers later transferred to a charity the right to use the air space above the existing two stories for the construction of several stories to be used by the charity for its charitable purposes. In the transfer agreement it was provided that if the first two floors should ever be destroyed by casualty of any nature, the rights of the charitable foundation would end at that time. Nevertheless, the Tax Court held this was a transfer of a "present irrevocable interest" and determined that the Taxpayers were entitled to a deduction measured by the present value of the air space and the right to build on the existing building.

In the case before us the Commissioner points out that the conveyance of the right to use the property was for an indefinite period and was subject to termination by the Taxpayer on 15 days notice and he urges this as being a basis for taking this case outside of the scope of the holding in Sullivan and Fair. This contention will not bear analysis because in both Sullivan and Fair the grant of the use of the property was

for a period the end of which could not then be determined, and in neither of those cases could the charitable organization be legally sure of the right to use the property for *even as much as 15 days*. In Sullivan the property was to be used by the Red Cross until the end of the war. The war could have ended in ten days or less and if that event had occurred the title to the property would thereupon have reverted to the Taxpayer. In Fair the conveyance was for an indefinite term but it was provided that if the first two floors of the building were destroyed by casualty of any kind the rights of the charitable foundation would terminate at that time and conceivably such a casualty might have occurred within forty-eight hours after execution of the instrument, so, as above noted, in neither Sullivan nor Fair was there a legal assurance of the right to use for as much as 15 days. Of course, in each of these cases the important question is not whether the right *might* have been terminated, but rather, whether the right *was* terminated, and the heretofore agreed upon stipulation makes it clear that the charitable organization in this case had the exclusive use of this property for the two years in question.

Let us consider the Commissioner's contention that in this case there was no gift of property but "merely the granting of a privilege for which no charge was made".

"Property" is more than just the physical thing—the land, the bricks, the mortar—it is also the sum of all the rights and powers incident to ownership of the physical thing. It is the tangible and the intangible. Property is composed of constituent elements and of these elements the right to *use* the physical thing to the exclusion of others is the most essential and beneficial. Without this right all other elements would be of little value, for if the owner is deprived of the use of the tangible thing, little more than a barren title is left in his hands. It is for this reason that in proceedings involving condemnation by eminent domain it is universally held that whatever physical interference annuls the right of unrestricted *use* amounts to a taking of the condemnee's "property".

If the right to use real estate is to be regarded as "merely" an incidental privilege we suppose that it might also be said with equal logic that the right to remove the oil from an oil well is "merely" a privilege and that the really important thing is who owns the hole in the ground.

We do not consider the form of legal writing used to convey the property as being of prime importance. In Sullivan the Taxpayer used a deed form, in Fair the Taxpayer used what is sometimes referred to by the Tax Court as being a "document" and at other times as being an "instrument", and it is not clear whether the conveyance was by deed, lease or some other type of agreement, and apparently the Tax Court did not consider this material. In this case the conveyance of the property is in the form of a lease. It is not the *form* of the transaction, but rather the *substance* of what was accomplished that is important, and in Sullivan, Fair and in this case there was a transfer of a valuable right to use the subject property.

It is clearly a fact that Youth Craft received and the Taxpayer gave a valuable benefit by virtue of Youth Craft's occupancy and use of the property during 24 months of time, and, as heretofore noted, this value is stipulated in the agreed upon stipulation of the facts.

It has been a constant legislative policy since the first Income Tax Act in 1917 to permit the deduction of charitable contributions. There can be no doubt that the purpose has been to encourage such contributions and in the various revenue acts since 1917 it has clearly been the intent of Congress to stimulate charitable contributions. Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246 (1934); United States v. Pleasants, 305 U.S. 357, 59 S.Ct. 281, 83 L.Ed. 217 (1939).

In the Bliss case the Court said of Congressional intent that:

"In order to encourage gifts to religious, educational and other charitable objects (Congress) granted the privilege of deducting such gifts from gross income."

In Pleasants it was said that:

"* * * We observed in the Bliss case that the exemption of income devoted to charity and the reduction of the rate of tax on capital gains 'were liberalizations of the law in the taxpayer's favor, were begotten from motives of public policy, and are not to be narrowly construed.'"

It is our view that in the Sullivan case the Tax Court clearly overruled the Commissioner's ruling in 3918 and in so doing the Court carried out the broad intent of Congress to encourage charitable contributions and of liberally construing the charitable donations provisions of the Revenue Code. It is our further view that the case here presented is substantially the same as that presented in Sullivan. The parties to this transaction, the Taxpayer and Youth Craft, certainly intended that the Taxpayer made a gift to this charitable corporation.

Paragraph 1 of the lease says:

"Landlord has given to Tenant and Tenant has accepted from Landlord as a gift the use and rental of the premises located in the City of Columbus * * *."

Paragraph 2 states:

"Landlord has given to Tenant the use and rental of said described premises for the term commencing * * *."

Paragraph 3 states:

"Tenant shall not pay to Landlord any sum for the use, occupancy and rental of said premises, it being the intention of the parties to this contract that Landlord hereby gives the use, occupancy and rental of said property to Tenant * * *."

We conclude that the intent of Congress referred to by the Supreme Court in Bliss and Pleasants embraces the circumstances of this transaction and that the charitable gift made by the Taxpayer is clearly a deductible donation within the meaning of § 170 of the Internal Revenue Code.

Judgment for the Petitioners will be entered accordingly.

It is so ordered this 5th day of December, 1963.