**John Herbert ORR and Elizabeth G. Orr,**
**Appellants,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 21268.

United States Court of Appeals
Fifth Circuit.

March 29, 1965.

Edward M. Selfe, Birmingham, Ala., John V. Denson II, C. C. Torbert, Jr., Opelika, Ala., Griffin F. Pitcher, Birmingham, Ala. (Samford & Torbert, Opelika, Ala., and Bradley, Arant, Rose & White, Birmingham, Ala., of counsel), for appellants.

Karl Schmeidler, Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Frederick Youngman, Dept. of Justice, Washington, D. C., Ben Hardeman, U. S. Atty., Montgomery, Ala. (Rodney R. Steele, Asst. U. S. Atty., of counsel), for appellee.

Before RIVES, WISDOM and BELL, Circuit Judges.

WISDOM, Circuit Judge:

The question this case presents is whether the taxpayer is entitled to a charitable deduction, under section 170 of the Code of 1954,[1] for part of the costs of operating his personal automobile and airplane used in connection with his volunteer services for the Methodist Church.

The facts are stipulated. In 1957 and 1958 the taxpayer, John Herbert Orr, served on numerous boards and committees of the Methodist Church. In carrying out these duties he used his own automobile and airplane. He also used the vehicles for non-charitable purposes.[2] The taxpayer claims a deduction for a proportionate share of his gasoline and oil, insurance, depreciation, and repair

---

1. "Sec. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

 "(a) Allowance of Deductions.—

 "(1) General rule.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year.

 \* \* \* \* \*

 "(c) Charitable Contribution Defined.—For purposes of this section, the term 'charitable contribution' means a contribution or gift to or for the use of —\* \* \*

 "(2) A corporation, trust, or community chest, fund, or foundation—\* \* \*

 "(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

 "\* \* \*"

 Sec. 1.170–2. CHARITABLE DEDUCTIONS BY INDIVIDUALS; LIMITATIONS.

 (a) In general. (1) A deduction is allowable to an individual under section 170 only for charitable contributions actually paid during the taxable year, regardless of when pledged and regardless of the method of accounting employed by the taxpayer in keeping his books and records. A contribution to an organization described in section 170 (c) is deductible even though some portion of the funds of the organization may be used in foreign countries for charitable or educational purposes.

 \* \* \* \* \*

 (2) No deduction is allowable for contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in rendering donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of rendering donated services also are deductible. For the purposes of this section, the phrase "while away from home" has the same meaning as that phrase is used for purposes of section 162.

2. Orr used one automobile exclusively for charitable purposes until July 1957. He sold that automobile in July 1957 and acquired another which he used partly for non-charitable purposes. The record does not show whether Orr included the automobile which he sold in 1957 in his computations. The court below assumed that Orr is entitled to full charitable deductions for the expenses of the vehicle used solely for charitable purposes. We make the same assumption.

expenses. The Commissioner allowed the charitable deduction for out of pocket, unreimbursed expenses for gasoline and oil, pilot fees, and license registration fees, but disallowed the deduction for depreciation, insurance, and repair expenses. The taxpayer paid the difference and sued for a refund. The district court upheld the Commissioner, 226 F.Supp. 809. We affirm.

## I.

"Where a gift is in the form of other than money, the basis for calculation of the amount thereof is the fair market value of the property at the time of the gift. The Code contemplates a contribution of money or property and not services. No deduction is allowed for the value of the latter." 5 Mertens, Law of Federal Income Taxation § 31.05, 35. The taxpayer advances two theories to support the claimed deduction. Neither theory fits section 170.

 First, the taxpayer argues that he should be allowed to deduct the fair rental value of the vehicles for the length of time he used them for charitable purposes. He argues that the use of the vehicles represents a gift of the use of property to the Methodist Church.

In 1948 the Commissioner ruled that a gift of the use of property is not deductible. I.T. 3918, 1948–2 Cum.Bull. 33.[3] Notwithstanding this ruling, several cases, on which the taxpayer relies, have held that a taxpayer may deduct a gift of the use of property *in certain circumstances*. For example, the Tax Court has held that a gift of the use of property is deductible if the donor retains no power to revoke the gift. P. M. Sullivan, 1951, 16 T.C. 228; Mattie Fair, 1957, 27 T.C. 866. A district court has held that a gift of a use revocable by the donor ("tenancy at will") is deductible.

Passailaigue v. United States, M.D.Ga. 1963, 224 F.Supp. 682. Passailaigue stresses that "property" is a bundle of rights and duties, and a gift of the use of property is a gift of one of the most valuable attributes of ownership. 224 F. Supp. at 686. One writer suggests that Passailaigue completely overturns the Commissioner's position. See Hofert, "Rental Value of Donated Space as Charitable Contribution," (1964) Taxes 745.

These cases are distinguishable. Here there was no donation of the use in the sense that in P. M. Sullivan the taxpayer conveyed property to the Red Cross in 1942 for the duration of the World War II or until the Red Cross ceased to use the property as its headquarters. The Tax Court treated the conveyance as a transfer of a freehold in the nature of a determinable fee. In Mattie Fair the taxpayers transferred a lot and two-story building, giving the charity the perpetual right to build, own, and maintain five additional stories. In Passailaigue the taxpayer executed a lease of property in writing to a charitable organization rent-free. In each of these cases, the charitable organization took possession and had exclusive control of the property. Here, however, the vehicles remained under the taxpayer's control at all times. In the circumstances of this case the taxpayer's theory of a gift of their proportionate use in terms of rental value is an untenable fiction. Since the Church had neither control nor possession of the airplane and automobile, we cannot hold that, for purposes of a charitable deduction, the Church was using the taxpayer's vehicles.

## II.

Second, the taxpayer claims a proportionate share of his depreciation, repair, and insurance expenses on the vehicles.

---

3. I.T. 3918, 1948–2 Cum.Bull. 33 provides that "[i]t is the view of this office that permission to use and occupy property granted to an organization described in section 23(o) of the Code does not represent a *payment* made to or for the use of the organization within the meaning of that section. Such an arrangement does not constitute a gift of property. It is merely a granting of a privilege for which no charge is made."

(1) *Depreciation.*[4] Section 170 allows a deduction for "any charitable *contribution* (as defined in subsection (c)) *payment* of which is made within the taxable year." (Emphasis supplied.) The taxpayer marshals the legislative history of the statute. His references indicate that the clause including the word "payment" was introduced to clarify the tax year of the deduction, not the meaning of "charitable contribution". See Report of Subcommittee of Committee on Ways and Means, 75th Cong., 3d Sess., of Proposed Revision of the Revenue Laws (1938) at 47; Report of the Ways and Means Committee, H.R.1860, 75th Cong., 3d Sess., 1939-1 Cum. Bull. 728 at 741. Nevertheless, the statute states plainly that a contribution is something which is *paid.*

Other legislative history shows that the word "payment" is an essential part of the definition of "charitable contribution" in section 170(c). In 1954 Congress enacted subsection (b) (1) (A) of section 170. This subsection grants an extra ten per cent deduction for "contributions *to*" certain types of charities.[5] The House and Senate Committees pointed out that this language excludes gifts "for the use of" these charities: "It is to be noted that such charitable contribution must be paid *to* the organization and not *for the use of* the organization. Accordingly, payments to a trust (where the beneficiary is an organization described \* \* \*) are not included under this special rule." (Emphasis by the Committees.) H.R. No. 1337, 83rd Cong. 2d Sess., 1954, in 3 U.S. Code & Administrative News at page 4190; Sen-

ate Report, 83rd Cong., 2d Sess., 1954 in 3 U.S. Code & Administrative News at page 4843. The House and Senate Committees, therefore, defined a charitable contribution in terms of a direct *payment* to a charity. The legislative history of the 1954 Congress is not always a safe guide to that of an earlier Congress. United States v. Price, 1960, 361 U.S. 304, 80 S.Ct. 326, 4 L.Ed.2d 334. But here the later Congress reenacted the words of the earlier Congress; the legislative history in the later Congress is a gloss on the statute. Cf. Fire Companies Bldg. Corp. v. Commissioner, 2 Cir. 1930, 54 F.2d 448 (L. Hand, J.), cert. den'd 286 U.S. 546, 52 S.Ct. 498, 76 L.Ed. 1283.

■ It is entirely possible, as the taxpayer suggests, that Congress and its Committees were not thinking of depreciation when they used the word "payment". The absence of any evidence as to whether Congress focused on this problem provides no basis for extending the meaning of payment to include "depreciation". A depreciation expense is an indispensable element in accounting. But it is not a "payment", not a transfer of money or property.[6] We are bound by plain, prosaic language of the statute. Better Business Bureau v. United States, 1945, 326 U.S. 279, 66 S.Ct. 112, 90 L.Ed. 67.

■ (2) *The Insurance Expense.* As an out of pocket expense, the liability insurance premiums meet the statutory requirement of a "payment". Section 170(c), however, provides that a charitable contribution is a "contribution or

---

4. The Tax Court has recently held that a taxpayer cannot take a charitable deduction for the depreciation of his personal automobile used for performing charitable services. Clinton H. Mitchell, 1964, 42 T.C. No. 953.

5. Section 170(b) (1) (A) states: "In the case of an individual the deduction provided in subsection (a) shall be limited as provided in subparagraphs (A), (B), (C), and (D). (A) Special rule. Any charitable contribution to \* \* \* shall be allowed to the extent that the aggregate of such contributions does not ex-

ceed 10 per cent of the taxpayer's adjusted gross income \* \* \*."

6. The taxpayer relies on Benjamin Klopp, 1960, 19 C.C.H. T.C.Mem. 973. Klopp holds that a taxpayer who gives part of a tract of land can deduct the severance damages to the rest of the tract. The taxpayer argues that depreciation resembles severance damages, in that neither is a "payment". But the gift of land in Klopp was the "payment", and the severance damages were merely an element of the fair market value of the land.

gift *to or for the use of*" a charity. The insurance payment was, of course, not a "contribution *to*" a charity; the question, therefore, is whether it was a gift "for the use of" a charitable organization.

The taxpayer did not use the vehicles exclusively for charitable purposes.[7] Unlike his payments for oil and gasoline, expenses which were a direct result of the travel for charitable purposes, the insurance premiums would have been paid even if he had not done any charitable work at all. The words "gift to or for the use of" will not stretch to include payments which the taxpayer would have made for non-charitable reasons. The Internal Revenue Service puts the result in terms of whether the payment was "directly attributable" to the charitable services. Rev.Rul. 58–279, 1958–1 Cum. Bull. 145. We accept this construction in the sense that the charitable work must be the cause of the payments in order for the payments to be deductible. Since the test is one of causation, the taxpayer's motivation is irrelevant to the determination whether the payment is a charitable contribution. Holdeen v. Ratteree, 2 Cir. 1961, 292 F.2d 338.

The taxpayer argues that the charity received a benefit from the insurance in that Alabama tort law does not recognizable charitable immunity. Even if the petitioner be correct (which we do not decide) the potential benefit to the charity does not bring the insurance premiums within section 170. Life insurance provides a useful analogy. The Commissioner agrees that life insurance premiums are a charitable contribution if the charity is an irrevocable beneficiary. O.D. 299, Cum. Bull. 1919 at 151. The cases agree with the Commissioner in permitting the deduction if the charity is an irrevocable beneficiary, but not if the donor or any other person has the power to alter the policy and eliminate the charitable beneficiary. Compare Eppa Hunton IV, 1943, 1 T.C. 821; Ernst R. Behrend, 23 B.T.A. 1037; with Mortimer C. Adler, 5 B.T.A. 1063; Thomas L. Awrey, 1955, 25 T.C. 643. The donor here retained more than the power to alter the policy; he was a beneficiary of the policy. In the revocable life insurance beneficiary cases there was a potential non-charitable beneficiary; here there was an actual non-charitable beneficiary. There is another difference between the liability insurance beneficiary and a life insurance beneficiary: the charity's benefit from the liability insurance is more remote than the benefit of a life insurance beneficiary. The irrevocable life insurance beneficiary will eventually collect the face value of the policy; the charity may never benefit from the liability insurance. Even if there is an accident the injured party might always choose to sue the taxpayer rather than the charity. The life insurance cases suggest that a liability insurance premium is non-deductible even if the charity is sole beneficiary. We decide only that, because the charity was not the sole beneficiary of the liability insurance, the donor cannot deduct the premium.

█ The legislative history supports our conclusion as to the insurance premiums as well as to the depreciation. Under the 1939 Code, the Service and the Tax Court treat a gift "for the use of" a charity essentially as a gift in trust for a charity. See John Danz, 1954, 18 T.C. 454, aff'd on other grounds, 9 Cir. 1955, 231 F.2d 673; Rev. Rul. 194, C.B. 1953–2 at 128; I.T. 37037, Cum.Bull. 1945 at 114. In 1954 Congress reenacted the statute using the same language. The prior construction is of some value in determining the meaning of the new statute. See e. g., Bridgeport Hydraulic Co. v. Kraemer, 2 Cir. 1955, 219 F.2d 929; Commissioner of Internal Revenue v. Monarch Life Ins. Co., 9 Cir. 1940, 114 F.2d 314. The legislative history of the Code of 1954 itself shows that the Senate and House Committees pointed out that a gift in trust is an example of a gift "for the use of" a charity. Congress in 1954 granted an additional ten per cent chari-

---

**7.** See footnote 2.

table deduction for contributions *to* certain types of charity rather than merely "for the use of" the charity. The Senate and House Committees explained what they meant by a payment "for the use of" a charity: "Accordingly, payments to a trust (where the beneficiary is an organization described \* \* \* ) are not included under this special rule." See H.R. No. 1337, 83rd Cong., 2d Sess. 1954, in 3 U.S.Code & Administrative News at page 4190; Senate Report, 83rd Cong., 2d Sess. 1954, in 3 U.S.Code & Administrative News at page 4843. Of course this illustration is not exclusive. Many payments other than payments to a trust are payments "for the use of a charity". See for example the oil and gas expenses allowed in this case, or the expense of Civil Air Patrol Uniforms allowed in Rev. Rul. 58–279, 1958–1 Cum.Bull. 145. But the trust example warns us against overextending the concept of payments for the use of a charity. At best the liability insurance payments mean only a potential economic benefit to the charity.

■ (3) *Expenses for Repairs.* The Service concedes that the taxpayer may deduct repair expenses attributable to the charitable services. See Rev.Rul. 48–279, 1958–1 Cum.Bull. 145. As in the claim that insurance premiums are deductible, the taxpayer may deduct the expense for repairs of a vehicle used *solely* for charitable purposes. Here, however, the taxpayer used the vehicles for noncharitable purposes, and the taxpayer has not proved that the repairs were caused by the use of the vehicles for charitable purposes. The taxpayer has the burden of proof. Failure to prove that the charitable use of the vehicles caused the repairs [8] bars the taxpayer's claim for a charitable deduction.

The judgment is affirmed.

8. The taxpayer relies on Estate of Phillip A. Carroll, 1962, 38 T.C. 868. Carroll holds that a taxpayer who donates to a church the use of a chapel on the taxpayer's land can deduct the cost of repairs to the chapel. But in Carroll the property repaired was used only for religious purposes, and the property here was used partly for non-religious purposes. Commissioner apparently concedes that repair expense is deductible if the property is used for charitable purposes only.