JOHN I. APPLEBY AND CAROLYN M. APPLEBY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1948–66. Filed June 16, 1967.

*Arthur W. Moore,* for the petitioners.
*Frank E. Wrenick,* for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies in petitioners' income tax for the years 1963 and 1964 in the respective amounts of $1,002.64 and $555.13.

The only assignment of error in the petition is that respondent erred in determining that their contributions to a trust did not qualify for the additional deduction provided in section 170(b) (1) (A), I.R.C. 1954.[1]

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

FINDINGS OF FACT AND OPINION

All of the facts have been stipulated and they are found accordingly.

Petitioners are husband and wife, who reside in Bellevue, Ohio. They filed their joint income tax returns for 1963 and 1964 with the district director of internal revenue at Cleveland, Ohio.

Under date of September 27, 1962, John I. Appleby executed an instrument as donor entitled "The John I. Appleby and Carolyn McAfee Appleby Foundation Trust Agreement." The agreement was with the City National Bank & Trust Co. of Columbus, Ohio, which also signed the instrument as trustee. The instrument created a trust to be called the John I. Appleby and Carolyn McAfee Appleby Foundation. The trust fund was to consist of stocks, bonds, cash, securities, proceeds of insurance policies, and other assets, set forth in a schedule attached thereto, and such other stocks, bonds, cash, securities, proceeds of insurance policies, and other assets the donor might transfer to the trust by gift or will.

The instrument directs the bank as trustee "to distribute the net income (after payment of all lawful charges thereon) of the trust fund, if any, once each year during the term of this trust to Park College of Parkville, Missouri." The instrument goes on to give the trustees limited power to distribute a part of the corpus to the college if called upon so to do by the trustees of the college. Such call could only be made once in each calendar year and for not more than 10 percent of the then market value of the trust fund with the further limitation that the college could "at no time * * * make calls upon the corpus of the trust which will reduce the corpus of the trust below the value of the property contributed to the fund by the Donor either as intervivos gift, gifts by will and gifts by way of insurance policies."

The instrument gives the trustee broad powers to hold, sell, lease, transfer, and dispose of property and invest and reinvest the trust funds. The trustee is not required to give bond but the donor reserves for himself and his wife during his or her lifetime the right to remove the trustee without cause and substitute a successor corporate trustee which is "in no way a 'related or subordinate party' as that term is defined for Federal tax purposes." The instrument provided the trust was irrevocable and paragraph 12 provided the trustee would be entitled "to compensation for its services hereunder in accordance with the Trustee's rates for like services published from time to time." Provision was also made for the trustee's "reimbursement from the Trust for all reasonable expenses incurred from time to time in connection with said trust."

It is stipulated that the John I. Appleby and Carolyn McAfee Appleby Foundation is a trust that is exempt from Federal income tax as an organization described in section 501(c)(3) and Park College,

Parkville, Mo., is an educational organization referred to in section 503(b)(2).

It is also stipulated that petitioners made charitable contributions in the amounts of $13,136.87 in the calendar year 1963, and $12,277.59 in the calendar year 1964 of which $11,605 and $8,856.25, respectively, were contributed to the John I. Appleby and Carolyn McAfee Appleby Foundation.

In their joint income tax returns for 1963 and 1964 petitioners reported total gross income of $37,444.47 and $33,460.76, respectively. Since the total amount of charitable contributions exceeded 20 percent of total gross income each year, the first charitable contribution deduction they took was limited to 20 percent of reported income, or $7,488.89 for 1963 and $6,692.15 for 1964.[2] Respondent's determination of deficiencies here did not disturb the method of computing these deductions though he did adjust the total gross income for at least one of the years and that adjustment is not in issue. However, in their returns for 1963 and 1964, petitioners took an additional charitable deduction of 10 percent of reported total gross income, or $3,744.45 for 1963 and $3,346.08 for 1964. It is these deductions that were disallowed in respondent's determinations of deficiencies, as explained in the notice of deficiencies such as the notice for 1963, which stated, in part, as follows:

It is held that contributions to the John I. Appleby and Carolyn McAfee Appleby Foundation do not qualify for the additional allowance of 10 percent of adjusted gross income provided in section 170(b)(1)(A) of the Internal Revenue Code of 1954.

The general rule governing a deduction for a charitable contribution is contained in section 170(a)(1). This statute provides, in part:

SEC. 170 (a). ALLOWANCE OF DEDUCTION.—
   (1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. * * *

Section 170(c) referred to in the above general rule provides, in part:

   (c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

   *       *       *       *       *       *       *

   (2) A corporation, trust, or community chest, fund, or foundation—

   *       *       *       *       *       *       *

      (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *

Section 170(b)(1) provides that in the case of an individual the deduction provided in subsection (a) shall be limited as provided in

---

[2] The general limitation, which will be referred to later, provides in sec. 170(b)(1)(B) that the deduction is limited to 20 percent of the taxpayer's adjusted gross income.

subparagraphs (A), (B), (C), and (D). The limitation that is applicable here is the general limitation contained in section 170(b)(1)(B) which provides the total deduction under subsection (a) for any taxable year "shall not exceed 20 percent of the taxpayer's adjusted gross income." This was the limitation employed by petitioners in computing their first charitable contribution deduction about which there is no dispute except that the amount was changed due to income adjustments that are not in issue.

In 1954 Congress enacted section 170(b)(1)(A) which granted an extra deduction not exceeding 10 percent of adjusted gross income for charitable contributions to certain types of religious, educational, government, or charitable organizations. This statute provides, in part, as follows:

(A) SPECIAL RULE.—Any charitable contribution to—

\*          \*          \*          \*          \*          \*          \*

(ii) an educational organization referred to in section 503(b)(2),

\*          \*          \*          \*          \*          \*          \*

shall be allowed to the extent that the aggregate of such contributions does not exceed 10 percent of the taxpayer's adjusted gross income \* \* \*

As previously stated, it is stipulated that Park College is an educational organization referred to in section 503(b)(2).[3] But the contribution here was not *to* Park College. It was to a trust. In order to qualify for this special deduction the contribution must be made directly to the described organization and it is not sufficient that the described organization be the beneficiary of the donee trust. The legislative history of this statute shows that the House and Senate committees meant the special rule to apply to charitable contributions *to* and not *for the use of* the organizations. H. Rept. No. 1337, 83d Cong., 2d Sess. (1954); S. Rept. No. 1622, 83d Cong., 2d Sess. (1954). Thus the cited Senate report states:

It is to be noted that such charitable contribution must be paid *to* the organization and not *for the use of* the organization. Accordingly, payments to a trust (where the beneficiary is an organization described in said clauses (i), (ii), or (iii) are not included under this special rule.

Respondent uses the language of the above report in his regulation (sec. 1.170-2(b)(1), Income Tax Regs.) which provides that "To qualify for the additional 10-percent deduction the contributions must be made 'to' and not merely 'for the use of' one of the specified organizations."

---

[3] A sec. 503(b)(2) organization is "an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on;"

At the trial of this case petitioners' counsel stated:

Now, at the outset I have to admit two things. Number one, that the Congressional Committee Reports on Section 170(b)(1)(A) are as clear as anything can be. The Congress said in those committee reports they did not intend that the additional 10 percent charitable contribution apply in the case of gifts in trust.

The regulations are just as clear as the Committee Reports. The regulations picked up the words of the Congressional Committee and this is what the regulations now contain.

A gift in trust does not qualify for the additional 10 percent of 170(b)(1)(A).

\*     \*     \*     \*     \*     \*     \*

My contention is that Congress did not pass what they thought they were passing, nor what they wanted to pass.

Thus it appears that the conclusion, that the special rule granted an additional deduction for gifts in trust, is, according to petitioners' argument, a consequence resulting from a congressional mistake. They argue the special rule grants a deduction which they admit Congress intended to exclude.

Petitioners endeavor to support their rather startling thesis on brief by assuming at the very outset that the phrase "charitable contribution" must be given the definition, with both alternatives, found in section 170(c) as being a "contribution or gift to *or* for the use of" in all of the subsections of section 170. (Emphasis supplied.) Encouraged by this assumption they proceed to substitute the entire section 170(c) definition for the phrase "charitable contribution" in the special rule. By so doing they make the special rule read "contribution or gift to or for the use of" the designated organizations, thus rewriting the statute.

There is no substance in petitioners' argument. The definition of charitable contribution found in section 170(c) is in the disjunctive. Thus a charitable contribution can by definition be either a contribution or gift to a described organization or a contribution or gift for the use of a described organization. It is obvious the word "to" was designedly used in this special rule to give the additional deduction when the gift was *to* and not merely *for the use of* the described organizations.

In *Orr* v. *United States*, 343 F. 2d 553 (C.A. 5, 1965), this special rule was considered and the court stated:

Under the 1939 Code, the Service and the Tax Court treat a gift "for the use of" a charity essentially as a gift in trust for a charity. [Citations.] In 1954 Congress reenacted the statute using the same language. The prior construction is of some value in determining the meaning of the new statute. [Citations.] The legislative history of the Code of 1954 itself shows that the Senate and House Committees pointed out that a gift in trust is an example of a gift "for the use of" a charity. *Congress in 1954 granted an additional ten per cent charitable deduction for contributions to certain types of charity rather than merely "for the use of" the charity* \* \* \* [Emphasis supplied.]

Petitioners' contributions to the foundation do not qualify for deduction under the special rule of section 170(b)(1)(A) because they are not within the statutory requirement that they be made to and not merely for the use of the college.

Petitioners make an alternative argument that their contributions to the foundation are really contributions to the agent for Park College and thus contributions "to" an organization referred to in section 503(b)(2). There is no merit in this argument. As pointed out in *Orr* v. *United States, supra,* the gift in trust is the classic example of a gift for the use of the charity that is named beneficiary as distinguished from a direct gift to the charity. The gift to the trust is not made a gift *to* the sole beneficiary even though the trust is irrevocable and the donors have no further rights over the subject of the gift.

Here the college is entitled to receive the net income after the payment of the trustee's fees and expenses and it has some limited right to secure corpus but the entire trust corpus is subject to the trustee's right to invest, sell, exchange, convey, mortgage, lease, or otherwise dispose of such trust property. The trust provisions preclude a gift to the foundation from passing entirely to the college. In fact, it is extremely unlikely that an entire gift to the foundation will inure to the benefit of the college. It cannot be said the gift to the trust is a gift to the college.

We sustain the determination of respondent that petitioners' gifts to the foundation do not qualify for the additional deduction.

*Decision will be entered under Rule 50.*