John B. **THRELFALL** and Mrs. M. Threlfall, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

No. 66–C–135.

United States District Court W. D. Wisconsin. June 27, 1969.

John C. Fritschler, Jr., David J. Ross, Madison, Wis., for plaintiffs.

Mitchell Rogovin, Asst. Atty. Gen., Donald R. Anderson, Richard J. Sideman, Attys., Dept. of Justice, Washington, D. C., Edmund A. Nix, U. S. Atty., Thomas Eckerle, Asst. U. S. Atty., Madison, Wis., for defendant.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is an action brought under 28 U.S.C. § 1346(a) (1) to recover federal income taxes and statutory interest assessed and paid thereon in a total amount of $514.97 claimed to have been wrongfully and erroneously assessed and collected from plaintiffs for the calendar year 1963. The action arises under the Internal Revenue Code of 1954.

My findings of fact and conclusions of law appear in this opinion. Rule 52(a), Federal Rules of Civil Procedure.

All of the pertinent facts relative to the issues in this action have been stipulated by the parties. These facts are so found and are as follows. Plaintiff John B. Threlfall[1] is a self-employed individual engaged in the construction business and in the business of leasing real property. Plaintiff and his wife filed a joint federal income tax return

---

1. Mrs. Threlfall is a party herein only because a joint income tax return was filed for the year in issue, thus all singular references to the plaintiff will refer to John B. Threlfall.

for the calendar year 1963 and reported income under the cash receipts and disbursement method of accounting.

During the fall of 1963, the Dane County, Wisconsin chapter of the United Cerebral Palsy Foundation (hereinafter the Foundation) requested of plaintiff that it be permitted in early 1964 to use office space in a building which he owned in order to conduct a fund raising drive. Plaintiff agreed and confirmed the agreement by a letter to the Foundation, dated December 30, 1963. The text of this letter is as follows:

"This is to acknowledge your acceptance of my contribution of office space to United Cerebral Palsy of Dane County. To set the record straight I am donating to you rooms numbered 102, 104, 106 and 108 in the LINCOLN BUILDING located at 333 Price Place, Madison. These rooms consist of 1152 square feet of space on the main floor and included is heat, air conditioning, ventilation, 5 night per week janitor service, lights and electricity, parking space, use of wash room, women's rest room, halls, storage locker off utility room and venetian blinds furnished. The rent for this space is figured at $388.00 per month which is the rate I would charge your group or any other such charitable organization. You have indicated to me that you will want the space for 2½ months. Ordinarily I would not consider anything less than increments of a full month nor less than a full year lease. However, in view of the nature of your group, I am happy to have you for 2½ months which makes the value of the donated space for the 2½ months at $970.00.

"Since this donation was made in 1963 I would appreciate it if you would send me an acknowledgement indicating such date so that I may have it for my records to support my 1963 income tax return.

"Also, our records should indicate that I am donating this office space, NOT cash."

Thereafter, in the initial three and one-half months of 1964, the Foundation used four rooms, or "bays", in the Lincoln Building, located at 333 Price Place, Madison, Wisconsin. This building was owned by plaintiff. The rooms were used by the Foundation solely for charitable purposes. No rent or other expenses were paid to plaintiff by the Foundation for the use of the rooms. The Foundation is one of the types of organizations referred to in 26 U.S.C. § 170(c).

In his income tax return for 1963, plaintiff claimed a charitable deduction in the amount of $1,358. The amount of the deduction represented the total rental income which was attributed to the office space used by the Foundation during the initial three and one-half months of 1964.

On or about April 1, 1966, the Internal Revenue Service disallowed the claimed charitable deduction and assessed against plaintiff a tax deficiency in the amount of $461.72 together with interest in the amount of $53.25. Plaintiff paid the assessment on March 16, 1966, and April 7, 1966. On May 6, 1966, plaintiff filed a timely claim for refund of the assessment together with statutory interest. The claim for refund was disallowed on October 19, 1966, and this action was subsequently timely filed.

26 U.S.C. § 170(a) (1) provides for the allowance of a deduction for " * * * any charitable contribution * * * payment of which is made within the taxable year." Section 170(c) defines a "charitable contribution" as a contribution or gift to or for the use of certain enumerated types of organizations. It is undisputed that the Foundation is one of the types of organizations referred to in Section 170(c). The government contends however (1) that the permission granted by plaintiff in 1963 to the Foundation to use space in plaintiff's building in 1964 did not constitute a charitable contribution payment of which was made in 1963; (2) that if plaintiff is entitled to a charitable deduction for the amount of income which

he sacrificed when he permitted the Foundation to use space in his office building, he should also constructively recognize gross income for the amount of rental income sacrificed; and (3) that if a deductible contribution was made, the government is entitled to an offset for the taxes reflected by plaintiff's claimed deduction for depreciation with respect to that portion of the building occupied by the Foundation. With respect to the last contention, the government, while adhering to its position that a depreciation deduction should not be allowed for depreciable property transferred to a charity, concedes that such a deduction in the present case would have to pertain to 1964 rather than 1963, the year for which plaintiff's tax liability is presently in issue. Accordingly, the government in its brief has requested that the defense in its answer which raises this contention be withdrawn and given no further consideration here.

The first contention of the government appears to raise two issues: (a) whether the permission granted by plaintiff to the Foundation to use space in plaintiff's office building constituted a "charitable contribution" within the meaning of Section 170(a) (1); and (b) whether, if such permission was a "charitable contribution" within the meaning of Section 170(a) (1), "payment was made within the taxable year" (1963) within the meaning of Section 170 (a) (1).

The government contends that plaintiff did not make a "charitable contribution" within the meaning of Section 170(a) (1) by granting the Foundation permission to use space in his office building. The donation of space in a building, the government asserts, is analogous to a contribution of services for which no deduction is allowed. Reliance is placed on I.T. 3918, 1948—2 Cum. Bull., in which the Internal Revenue Service ruled that a taxpayer who allows a charitable organization to use and occupy property could not deduct the value of such use under the predecessor of Section 170. The Internal Revenue Service concluded that permission to use and occupy property did not constitute payment to or for the use of a charitable organization within the meaning of the predecessor of Section 170; that it did not constitute a gift of property; and that it merely constituted the granting of a privilege for which no charge was made. The government also relies on Rev. Rul. 57–462, 1957—2 Cum.Bull. 157, which ruled that a newspaper may not deduct the contribution of free advertising space to a charity because the contribution is a service, and Rev.Rul. 67–236, 1967—2 Cum.Bull. 103, which ruled that a radio station may not deduct the contribution of free broadcast time to a charity.

Plaintiff concedes that a charitable deduction may not be taken for the donation of services, but contends that the donation of the use of space in a building transfers a property interest to the donee and is not analogous to the donation of services. Plaintiff further asserts that the government's position has been rejected by the courts on several occasions, citing Sullivan v. Commissioner, 16 T.C. 228 (1951); Fair v. Commissioner, 27 T.C. 866 (1957); and Passailaigue v. United States, 224 F.Supp. 682 (M.D.Ga.1963).

In Sullivan v. Commissioner, *supra*, the taxpayer in 1942 by deed conveyed certain property to the Red Cross for charitable purposes until the termination of hostilities then existing between the United States and Germany, Italy, and Japan or until the Red Cross should cease to use the property as its Manchester, New Hampshire headquarters, whichever event should first occur. Taxpayer claimed deductions for charitable contributions in each of the years 1942 and 1943 for the rental value of the property. The Tax Court held that the taxpayer made a single irrevocable gift to the Red Cross in 1942 in the nature of a determinable fee in the property and was, therefore, entitled to a charitable deduction in that year for the entire value of the gift.

In Fair v. Commissioner, *supra*, the taxpayer conveyed to a charitable organization by means of a certain instrument, the perpetual right to build, own and maintain five additional stories on an existing two-story structure owned by taxpayer, plus rights of access and support. The taxpayer did not obligate himself to rebuild the structure in the event it was destroyed, but if taxpayer did rebuild, the charitable organization also had the right to rebuild. The Tax Court held that the conveyance gave the charitable organization a present irrevocable interest in the property and that the taxpayer was, therefore, entitled to a charitable deduction in the year of the conveyance for the fair market value of the gift.

In Passailaigue v. United States, *supra*, the taxpayer permitted a charitable organization to use certain property without payment of rent. For the first month, the charitable organization occupied the property pursuant to an oral lease and thereafter under a written lease which provided that the lease would run for an indefinite period until the taxpayer decided to retake possession of the premises and evidenced such decision by giving the charitable organization fifteen days' written notice of the termination of the agreement. The court concluded that the right to use real estate constitutes a property interest and held that the taxpayer was entitled to a charitable deduction in the amount of the rental value of the property in each year in which the charitable organization occupied the taxpayer's property under the agreement.

The government contends that Sullivan v. Commissioner, *supra*, and Fair v. Commissioner, *supra*, are distinguishable from the present case because each involved a "freehold" interest as opposed to a "leasehold" interest. It concedes that Passailaigue v. United States, *supra*, supports the plaintiff's position, but asserts that *Passailaigue* should not be followed. The government asserts that the court in *Passailaigue* erroneously interpreted Sullivan v. Commissioner,

*supra*, as having overruled I.T. 3918, *supra*.

█ The government does not suggest any reason for distinguishing for the purposes of Section 170 between the grant of a freehold interest and the grant of a leasehold interest except to analogize a leasehold interest to a contribution of services. Section 170 and its predecessors reflect the legislative policy to encourage contributions to charitable organizations and, accordingly, the section should be liberally construed in favor of the taxpayer. See Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246 (1934); United States v. Pleasants, 305 U.S. 357, 59 S.Ct. 281, 83 L.Ed. 217 (1939). Surely the contribution of a leasehold interest may be a valuable gift to a charitable organization. Accordingly, the purpose of Section 170 would appear to be furthered by a conclusion that the donation of a leasehold interest is a "charitable contribution" within the meaning of Section 170(a) (1). Furthermore, unlike a gift of services the gift of a leasehold vests exclusive control and possession of the property in the donee, cf. Orr v. United States, 343 F.2d 553, 555 (5th Cir. 1965), and it would not appear to create the administrative problems in terms of valuation that a deduction for a gift of services might create.

█ I conclude that for the purposes of Section 170 there is no significant distinction between a donation of a freehold interest and a donation of a leasehold interest. It appears, therefore, that Passailaigue v. United States, *supra*, was correctly decided and should be followed here. Accordingly I conclude that the granting of permission by plaintiff to the Foundation to use space in plaintiff's building transferred a property interest to the Foundation and constituted a "charitable contribution" within the meaning of Section 170(a) (1).

The government contends that if the permission granted by plaintiff to the Foundation to use space in the plaintiff's building constituted a "charitable con-

tribution" within the meaning of Section 170(a) (1), it was not a contribution, "payment of which [was] made within the taxable year" (1963) within the meaning of Section 170(a) (1). To support this contention, the government has directed the court's attention to the legislative history of the Revenue Act of 1938 in which the word "payment" first appeared in the charitable deduction section. The addition is explained in the House Report, H.Rep.No. 1860, 75th Cong., 3rd Sess., pp. 19–20, 1939—1 Cum. Bull. (Part 2), 728, 741–742:

> "Under the various Revenue Acts the deduction for contributions is allowed for the taxable year in which the contribution is made. Hence, a taxpayer on an accrual basis of accounting may claim that he is entitled to a deduction for the amount of a charitable pledge in one year, although he does not actually pay it until a later year, or indefinitely postpones payment. The doubt and confusion in such cases is aggravated by reason of the uncertainty and diversity in the law of the various states on the question as to when the liability of a subscriber to a charitable fund is fully incurred. In the interest of certainty in the administration of the revenue laws, it is desirable to dispel this confusion by enacting a clear and uniform statutory rule to govern this situation.
>
> "The bill provides that the deduction for contributions or gifts for charitable and other purposes shall be allowed only for the taxable year in which the contribution is actually paid regardless of whether the taxpayer is reporting income on the cash or accrual basis. The allowance of the deduction in the year when actually paid will provide a clearer rule without hardship to the taxpayer and will

eliminate the uncertainty in the administration of the deduction. * * *"

The government argues that the letter from plaintiff to the Foundation, dated December 30, 1963, was merely a promise to grant the Foundation a leasehold in plaintiff's building during early 1964. This promise, the government contends, remained revocable in 1963 and could not be enforced until 1964.[2]

The plaintiff contends, on the other hand, that the letter created a validly executed inter vivos gift of a leasehold in plaintiff's building and that a validly executed inter vivos gift is irrevocable. The letter, plaintiff argues, created a present gift of future enjoyment analogous to a present gift of a remainder interest. In addition, plaintiff relies on Nordan v. Commissioner, 22 T.C. 1132 (1954), in which it was held that a transfer by deed of an interest in oil, gas and minerals in place to a charitable organization until $115,000 was received from production, constituted a contribution deductible in the year of the transfer although payments from production were not available until the following year.

I conclude that "payment" of the charitable contribution involved here was made in the year 1964. Although plaintiff contends that the letter of December 30, 1963, created an irrevocable inter vivos gift, there is nothing in the letter which expressly indicates that the donation was irrevocable. Plaintiff attempts to analogize the letter to the execution and delivery of a deed to the donee which is sufficient to execute a gift of land. Jost v. Wolf, 130 Wis. 37, 44, 110 N.W. 232 (1906). But it is not entirely clear that the letter is analogous to the execution and delivery of a deed, particularly is it not clear that it would be analogous to the execution and delivery of a deed in all jurisdictions. Accordingly, the purpose of eliminating uncertainty in the administration of the charitable deduc-

---

**2.** It should be noted that plaintiff's letter of December 30, 1963, does not expressly refer to the date on which the Foundation was to occupy the donated space. However, the stipulated facts clearly indicate that the Foundation wished to occupy the space in early 1964 and that the donation was intended to satisfy this wish.

tion which was sought to be achieved by the insertion of the word "payment" into the predecessor of Section 170 would appear to be furthered by the conclusion that payment of the contribution of the space to the Foundation was made in 1964. Although the addition of the word "payment" was expressly directed at the problem of pledges by taxpayers reporting income under the accrual method of accounting, the principle of administrative certainty which was sought to be achieved by that addition is equally applicable here. Nordan v. Commissioner, *supra,* relied upon by plaintiff, appears to be distinguishable from the present situation. Although the charitable organization in *Nordan* did not receive income from the property conveyed until the year following the conveyance, the transfer of the property was complete and irrevocable at the time the deed was delivered and the taxpayers merely had a reversionary interest in the property.

Although the foregoing is sufficient to dispose of this action, I proceed to a consideration of the government's contention that if plaintiff is entitled to a charitable deduction for the amount of income which he sacrificed when he permitted the Foundation to use space in his office building, he should also constructively recognize gross income for the amount of rental income sacrificed. In support of this proposition the government cites Alphaco, Inc. v. Nelson, 385 F.2d 244 (7th Cir. 1967). In that case taxpayer corporation sold all of its assets pursuant to a plan of complete liquidation which qualified under Section 337 relating to nonrecognition of capital gains. It was held that the expenses of selling the corporation's capital assets were not deductible under Section 162(a) relating to ordinary business expenses. The government particularly directs the court's attention to page 245 of the opinion, where it is stated:

"The scheme of the income tax statute is that the cost of producing a given type of income is to be accorded the same tax character as the income

produced—that related disbursements and receipts should be given consistent tax treatment."

Moreover, the government asserts that if plaintiff had leased the property to a third party and assigned his right to receive the rent to the Foundation, the rental income would have been includable in plaintiff's gross income, Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940), but would have been offset by a charitable deduction in the same amount. Likewise, the government asserts, if plaintiff had leased the property to the Foundation, received the rent and then donated the rent back to the Foundation, the rental income would have been includable in plaintiff's gross income, but would have been offset by a charitable deduction in the same amount. The tax consequences here, the government contends, should not be different merely because the property was donated rent-free directly to the Foundation.

As noted previously, however, the purpose of the charitable deduction is to encourage charitable contributions, Helvering v. Bliss, *supra;* United States v. Pleasants, *supra.* Accordingly, this case is distinguishable from Alphaco, Inc. v. Nelson, *supra,* which involved the deduction for ordinary and necessary business expenses the purpose of which is to facilitate business by allowing a deduction for the cost of producing income.

Because of the purpose of the charitable deduction to encourage charitable contributions it has long been the rule that a charitable donor may deduct the full value of a gift of appreciated property without reporting as income from an exchange the appreciation in the value of the property transferred. Sheppard v. United States, 361 F.2d 972, 977–978, 176 Ct.Cl. 244 (1966); See L.O. 1118, II—2 Cum.Bull. 148 (1923). Similarly, the fair market value of agricultural or manufactured products held for sale in the ordinary course of business which are contributed to a charitable organization is not includable in the gross income of the donor. Campbell v.

Prothro, 209 F.2d 331 (5th Cir. 1954); White v. Brodrick, 104 F.Supp. 213 (D.Kan.1952); Rev.Rul. 55–138, 1955—1 Cum.Bull. 223. In addition, it should be noted that the Internal Revenue Code permits taxpayers in many instances to deduct contributions of money which was exempt from taxation as income. Some examples are: pre-1913 income; the proceeds of life insurance contracts payable by reason of death, section 101; property acquired by gift, bequest, devise, or inheritance, section 102; and interest on certain governmental obligations, section 103. See generally, Comment, Rent-Free Lease to a Charitable Organization as a Contribution of Property-Deductibility for Federal Income Tax Purposes, 30 Mo.L.Rev. 477, 483 (1965).

I conclude, therefore, that plaintiff need not constructively recognize gross income for the amount of rental income sacrificed when he permitted the Foundation to use space in his office building.

For the reasons set forth herein, it is hereby ordered that judgment be entered for defendant and that the complaint be dismissed with prejudice and with costs.