JOHN G. ALLEN AND MAXINE S. ALLEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2501–70.    Filed October 4, 1971.

*Joseph C. Buck*, for the petitioners.
*John D. Steele, Jr.*, for the respondent.

#### OPINION

IRWIN, *Judge:* Respondent has determined deficiencies in petitioners' income tax for the taxable years 1966 and 1967 in the amounts of $3,303.73 and $1,440, respectively. The only issue presented is whether petitioners, having made a gift of a 5-year rent-free lease to a charitable organization in 1965, were correct in taking charitable contribution deductions equal to the annual fair rental value of the property in each of the years of the lease rather than an aggregate amount in 1965. This case arose prior to the Tax Reform Act of 1969 which amended the section in question here, section 170 of the Internal Revenue Code,[1] to prevent the deduction of further rent-free charitable gifts of this nature.

The facts herein have been fully stipulated and are found accordingly. In summary, they are as follows: John G. and Maxine S. Allen are husband and wife, respectively, and are residents of Corning, N.Y. They filed their joint Federal income tax returns for 1966 and 1967 with the district director of internal revenue in Buffalo, N.Y. Maxine S. Allen is included as petitioner by virtue of filing her returns jointly with her husband and, accordingly, all further references to petitioner will be deemed to designate John G. Allen.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

Petitioner, in 1965, was the owner of a parcel of land fronting on Seneca Lake (hereafter the Seneca property) which he had acquired from his mother by gift in 1963. On May 12, 1965, petitioner entered into an agreement with a charitable organization, the College Center of the Finger Lakes, whereby petitioner would give the College Center the use of the Seneca property on a rent-free basis for 5 years. The College Center was going to utilize the property in one of its projects known as Project Lake Diver. As per the agreement, the College Center possessed the right to terminate the agreement should the project be completed before the expiration of the 5-year term. The agreement further provided that if said project was not concluded within 5 years, the agreement would be extended for an additional 5-year period under mutually acceptable terms. Petitioner possessed no right to terminate the agreement before the expiration of the initial 5 years. Petitioner, on his 1965 return, did not claim any charitable contribution with respect to his gift to the College Center. Petitioner did not make an appraisal of the fair market value of the lease-hold which he conveyed. However, on his 1966 and 1967 returns, he claimed a charitable contribution of $3,000 in each year, such amount allegedly representing the annual fair rental value of the Seneca property. Respondent, in his statutory notice, disallowed the annualized deductions, asserting that petitioner had made a single, completed gift in 1965 and that, alternatively, petitioner furnished no satisfactory information relative to the determination of the correct and fair per annum rental value of the property. The parties now agree that such fair per annum rental value is $1,800 per year.

At the time of the transaction here in question, section 170(a)(1) provided for the allowance of a deduction for "any charitable contribution * * * payment of which is made within the taxable year." There is no doubt that petitioner did make a charitable contribution in respect of which he is entitled to a section 170 deduction. The question is, rather, for what year or years is he entitled to such a deduction. In other words, when did "payment" occur?

It is clear that "payment" can be in property other than money, the deduction then to be measured by the fair market value of the property at the time of the contribution. Sec. 1.170–1(c)(1), Income Tax Regs. During the years here in question a charitable deduction based on the value of rent-free use of property granted to an exempt organization is allowable if the charitable gift results in a legally enforceable conveyance of a present interest under local law. Rev. Rul. 70–477, 1970–2 C.B. 62. When such an interest is the subject of a charitable contribution, the amount of the deduction is to be measured by the fair market value of that present interest. Rev. Rul. 70–477, *supra.*

The parties agree that the agreement in this case represents a lease under the applicable New York State law. Because the gift was one of property and not money, the fair market value of the property interest defines the amount of the deduction available to petitioner. Further, the nature of the leasehold conveyed determines when petitioner is entitled to the deduction. If such lease creates a leasehold at will or from year to year, petitioner's per annum treatment is appropriate. Conversely, if the agreement creates a leasehold for a fixed term, in which case a single and complete gift was made in 1965, then a single charitable deduction for that 1 year would be the more accurate treatment.

The form of the transaction, whether by deed, lease, or another form of conveyance, is not determinative of the legal question involved. *Passailaigue* v. *United States*, 224 F. Supp. 682 (M.D. Ga. 1963). The substance of the conveyance, i.e., the rights and benefits obtained by the College Center, governs the outcome of the case.

Under the May 12, 1965, agreement, the College Center obtained a present, immediate, exclusive, and irrevocable interest in the Seneca property for a 5-year term. This right to occupy and use the Seneca property for charitable purposes could not be terminated by petitioner during the 5-year period. Only the College Center was given the option to return the property before the expiration of the term, and this would occur only if "Project Lake Diver" was completed ahead of the scheduled termination of the lease period. The College Center did not occupy the Seneca property from year to year at the will or sufferance of petitioner.

We held in *Priscilla M. Sullivan*, 16 T.C. 228 (1951), acq. 1951-1 C.B. 3, that a single and complete gift was made when taxpayer conveyed property by deed in 1942 to the Red Cross for the duration of the war or until the donee should cease to use the property as its Manchester, N.H., Red Cross center. In *Sullivan*, as in the facts before us, only the donee possessed the right to terminate.

On the other hand, in *Passailaigue* v. *United States, supra*, where the donor-taxpayer retained the right to terminate the charitable oral lease upon 15 days' notice to the charity, the District Court allowed the annualization of the charitable deduction, such yearly amount to be measured by the fair per annum rental value of the property.

On the basis of the facts presented here, we are satisfied that, for Federal income tax purposes, the lease conveyed to the College Center a present interest in property under State law which vested in the College Center exclusive control and possession of the property for a 5-year term. The rights conveyed could only be altered by the College Center upon an early conclusion of Project Lake Diver. Petitioner

did not possess, under the agreement, a "string" entitling him to regain the property within the 5-year term of the lease.

With respect to valuing the interest conveyed, there was no uncertainty about the length of the gift term or the fair market value of the property because no "strings" were attached. The fair market value of the interest conveyed was not rendered indeterminable by the College Center's right to terminate. A similar right in a donee did not prevent valuation in *Sullivan*, and there is no indication why appraisal could not have easily been made here.

A deduction is allowed under section 170 when a donor has relinquished control of a property interest and conveyed it to a charitable organization to be used exclusively by the organization for its charitable purposes. If the donor retains a right to terminate the intended conveyance, however, then he has rendered uncertain the actual usage of the conveyed property for charitable ends. Therefore, if there is doubt whether the property will be used for charitable design, the donor cannot initially claim the benefit of a charitable contribution deduction. Such benefit must then be suspended until the close of the donor's future taxable years.

Petitioner's gift here was fashioned in a manner which did not cast doubt upon the intended charitable use of the property. Petitioner relinquished all control over the property for 5 years and, therefore, was entitled to claim a charitable contribution in 1965 equal to the fair market value of a 5-year lease of the property.[2] With no "strings" attached to the conveyance, petitioner cannot now successfully assert an annualization of the charitable deduction. Petitioner made a single and a complete gift to the College Center in 1965, and it was in 1965 only that "payment" was made.

*Decision will be entered under Rule 50.*

---

[2] Since 1965 is a closed year to the taxpayer and he did not correctly take the charitable deduction in that year, we note that mitigation from our decision may perhaps be obtained by the taxpayer under secs. 1311–1314, I.R.C. 1954.