Gilbert J. SHEFFELS and Eleanor Sheffels, husband and wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Marjorie HEITMAN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 2535, 2713.

United States District Court
E. D. Washington, N. D.

Feb. 8, 1967.

Smithmoore P. Myers, U. S. Atty., Spokane, Wash., W. Forbes Ramsey, Atty., Dept. of Justice, Washington, D. C., for the United States.

Butler & Lukins, John E. Snoddy, Spokane, Wash., for plaintiffs.

## OPINION

POWELL, Chief Judge.

Plaintiffs ask refunds of claimed overpayments of 1961 personal income taxes. In their original returns they claimed as charitable deductions payments made for airplane travel to the Orient on People-to-People tours. The deductions were disallowed and deficiency assessments were made. The deficiencies were paid under protest. These actions are to recover the claimed overpayments. This Court's jurisdiction is under 28 U.S.C.A. § 1346(a) (1).

Plaintiffs assert their travel was under the aegis of the United States Information Service and the People-to-People organization. They therefore claim that the payments made were deductible as charitable contributions to the United States of America. This claim is under 26 U.S.C.A. § 170.[1]

Originally the plaintiffs claimed the amounts paid were deductible as business expense. This claim was abandoned at the trial. For the reasons stated hereafter the plaintiffs' claims that they are charitable deductions are disallowed and judgment will be entered for the defendant in both cases.

The People-to-People organization or movement was explained in detail at the trial by Dr. Robert Hunter of Spokane. He is the President of the local chapter of the People-to-People Council of Spokane. He has recently been elected to the eleven man board of the National Organization. He explained that in 1956 President Eisenhower advocated the formation of organizations to promote travel of American citizens in foreign countries to meet and exchange ideas with citizens there. The object was to promote among the peoples of the World a more complete understanding of mutual problems, desires, fears and aims. The free exchange of ideas was considered to be a means toward a lasting World Peace.

---

1. "SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(a) *Allowance of Deduction.*—

(1) *General rule.*—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

\*     \*     \*     \*     \*

(c) *Charitable Contribution Defined.*—For purposes of this section, the term 'charitable contribution' means a contribution or gift to or for the use of—

(1) A State, a Territory, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.

\*     \*     \*     \*     \* "

The Spokane Chapter was one of the original ones formed and has always been active. It has local meetings four times a year. It sponsored two or three foreign trips in 1961. The trips, which were originally called "missions", were required to show a purpose. The purpose, as Dr. Hunter explained, was "to see the people and have the people see us." Before the trips the local people would meet and be briefed. The meetings, with the counterparts in foreign countries, were originally arranged by representatives of the United States Information Agency. Travel and accommodations were arranged through a travel agency and the airlines.

In the Internal Revenue Service regulations, Rev.Rul. 57–38, it provides for certification of People-to-People committees.[2] This would assure a contributor that contribution to the committee would constitute allowable deductions. The Spokane Chapter was never certified under Rev.Rul. 57–38. Dr. Hunter stated he did not learn of possible certification until late in 1963 or in 1964.

The Spokane Chapter has rendered volunteer services. It has been active in the student exchange programs. It has helped and been helped by the American Field Service and by Rotary Clubs in foreign countries. The services of the committee proper would appear to be for exclusively public purposes. Originally the United States Information Agency was helpful. Dr. Hunter said that after 1963 there were problems. A bulletin of USIA dated June 24, 1963, concerning the Spokane Chapter is set out below.[3]

The Spokane Chapter has sponsored people coming here from South America to study agriculture. Its representatives meet foreign visitors who come to Spokane. They are met at the airport or railroad depot. The local members secure

2. "Rev.Rul. 57–38, 1957–1 Cum.Bull. 96. Contributions made to Committees organized to carry out the 'People-to-People Program' to acquaint people in foreign countries with the United States' objectives and principles, which Committees are certified by the United States Information Agency to the Commissioner of Internal Revenue as engaged in advancing the Program, and out-of-pocket expenses incurred by individuals in connection with the information of and in rendering volunteer services to such Committees, constitute allowable deductions under section 170 of the Internal Revenue Code of 1954 as contributions made to or for the use of the United States."

3. "U.S. INFORMATION AGENCY
UNCLASSIFIED

USIA CA–3789 June 24, 1963
SENT TO: ALL PRINCIPAL USIS POSTS
Subject : Spokane (Wash.) People-to-People Council Tours
Ref : CA–2836 April 3, 1963; or CA–3270 May 13, 1963

The Agency is forwarding a statement issued by the Spokane, Washington, People-to-People Council which clarifies the purposes of its privately-sponsored tours and disclaims any formal relationship with elements of the United States Government.

Posts may find this statement useful in dealing with travel agents who request assistance for this organization. Unless the Agency requests courtesies, posts should ignore all such travel agency blandishments, except when the post feels its objectives will be directly served.

The following statement was submitted to the Agency by Dr. Robert Hunter, Chairman of the Spokane People-to-People Council:

'The Spokane Chapter of People-to-People wishes to clarify its position regarding its relationship to the United States Information Agency, State Department and Agencies of the United States Government. The Spokane Chapter is engaged in acts of private initiative, using private money, for the purpose of increasing international understanding and friendship. * * * The Spokane Chapter does not seek or desire any government sponsorship or funds and does not claim any sponsorship of any government agency. * * * Our activities are strictly sponsored by groups or individuals, acting as private citizens. The Spokane Chapter recognizes its debt to the United States Information Agency of the State Department for its guidance and always welcome advice. * * * If sponsorship of any government agency or department is claimed, the Spokane Chapter would appreciate such knowledge so that immediate steps may be taken to correct the misunderstanding.'
MURROW "

housing in local homes for the visitors. The community has recognized the worthwhile activities of the People-to-People organization as shown by the Liberty Bell award made by the Spokane County Bar Association.

In 1961 plaintiffs, Gilbert J. Sheffels and his wife, went to the Orient on a tour sponsored by the Spokane Chapter of People-to-People. He became a member and attended meetings before the tour, which left Spokane November 9, 1961. He was one of the farmers on the tour of twenty-eight individuals. They went to San Francisco, Honolulu, Tokyo, Korea, Taipei, Hong Kong, Cambodia, Indonesia and Manila. On occasions he visited farms and discussed agriculture with people he would meet. The groups met with several Rotary Clubs, and on occasions were met and entertained by what would seem equivalent to a Chamber of Commerce Reception Committee.

Mr. Sheffels described the time spent in meetings with "counterparts" as 95% in Korea, down to 30% in Hong Kong, where he met no farmers. When away Mr. and Mrs. Sheffels sent letters home that were published in the local newspaper. On their return they gave talks to local groups to acquaint them with the problems of the people they had met on the trip. The Sheffels took numerous colored pictures which were artistically arranged to illustrate their talks. The talks were well received by the local groups.

Dr. Marjorie Heitman went on a trip in 1961 which was for women doctors, nurses and teachers. She went to about twelve meetings before the trip where Dr. Hunter described the activities of the People-to-People organization. She took notes during the entire trip. The group went first to San Francisco, where they met representatives from the consulates of Indonesia, Japan and Free China. They went to Tokyo and were welcomed by Japanese officials. They were met at their hotel by individuals whom they entertained. In these foreign countries they met with women doctors, nurses, social workers, and teachers.

Discussions generally were of the problems of alcoholism, socialized medicine and public health nursing. They were told before the trip that they would have no time to shop, which apparently from Dr. Heitman's testimony proved to be correct. The practice of medicine was discussed in each of the foreign countries visited. Dr. Heitman met people in public health service, as well as government officials. Her group toured hospitals, nursing homes and schools. They discussed the preparation of meals and sanitation. One particular method of food preparation was called "meals on wheels." It was of interest as it was new and novel. She made numerous talks to organizations and groups on her return. Dr. Heitman's tour apparently left little time for shopping or for individual sightseeing. The itinerary shows the group visited Tokyo, Taipei, Manila, Hong Kong, Bangkok, Singapore, Djkarta, Melbourne, Canberra and Aukland, all in thirty days.

Mr. Arnold Hanson testified for the defendant. He is the Deputy Assistant Director of the office of Private Cooperation within the U.S.I.S. He was familiar with the People-to-People tours. No local committees have been certified under Rev. Rul. 57-38. The certification has been only of the National organization.

Mr. Hanson testified that the U.S.I.S. would not deal with the local chapters. His organization would take exception if a claim was made that the U.S.I.S. sponsored a tour. He had no personal knowledge of the activities of the Spokane Chapter. There is no procedure set up for a local committee or chapter to apply for certification.

■■ Under 26 U.S.C.A. § 170 (Fn. 1) the contribution of a taxpayer to qualify as a deduction must be made to the United States "for exclusively public purposes." A payment to the Spokane Chapter to use in the expenses of the chapter in meetings and in housing foreign visitors might be within that category. I do not consider that certification under Rev. Rul. 57-38 is necessary if the contributions are actually and in fact used for

exclusively public purposes. Here the payments claimed were for the use of the individual taxpayers as well as for the United States. Under the facts in this case as they have been developed, the taxpayer is the primary beneficiary and the purposes of the government are served only incidentally. I can see very little difference between the private trips made by the ordinary tourist and those made by the taxpayers here. I feel that if any would qualify it would be Dr. Heitman who was most diligent in an effort to secure information and impart counsel and goodwill to the people whom she met in the foreign countries. I am sure that the United States of America gained materially in stature and goodwill by her association with doctors and nurses in foreign lands. At the same time I do not feel that her payments were for exclusively public purposes and must find that the payments of plaintiff do not qualify under the statute as charitable contributions.

The expression "for exclusively public purposes" has been used to describe the use of property. A city owned airport situated outside of city limits, open to the public generally, was tax exempt as being used "exclusively for public purposes." People ex rel. Lawless v. City of Quincy, 395 Ill. 190, 69 N.E.2d 892 (1946). Further, where a hangar at a city airport was used for offices, airplane storage, repair shop, boiler room, and toilets, such hangar was "used exclusively for public purposes." City of Toledo v. Jenkins, 143 Ohio St. 141, 54 N.E.2d 656.

Travel expenses incurred by members of a city commission were not deductible as contributions "exclusively for public purposes" where one of the purposes of the commission, which was authorized by resolution of a city council, was to promote a profitable business. Green v. Bookwalter, 207 F.Supp. 866, 878 (W.D. Mo.1962).

Under Section 170 of Title 26 U.S.C.A. it has been held that the amount paid by a taxpayer to enable his son to return to his station in military service was not deductible from taxable gross income as a "contribution for public purposes" made to the United States. Clark v. C. I. R., 158 F.2d 851 (6 Cir. 1946).

Payment made by a taxpayer as its share of the cost of a calculator which was donated to the State University, and which was to be made available by the university to donors for a twenty-year period, was not deductible as a charitable contribution but was a capital expenditure and not deductible in full as a business expense in the year of payment. Allis-Chalmers Mfg. Co. v. United States, 200 F.Supp. 91 (E.D.Wis.1961).

From the foregoing, and after due consideration of all the evidence in the case and the briefs submitted by respective counsel, it is my opinion that the defendant must prevail in both cases and that the contributions must be disallowed as deductions.

This opinion will constitute the findings of fact and conclusions of law. The defendant is requested in each of the two cases to submit judgment of dismissal.