T.C. Memo. 2019-57

UNITED STATES TAX COURT

ROBERT A. OLIVERI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6792-15.                    Filed May 28, 2019.

<u>Nancy Ortmeyer Kuhn</u>, for petitioner.

<u>Jeffrey E. Gold</u> and <u>Scott A. Hovey</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined that petitioner has a deficiency of

$16,548 in his 2012 Federal income tax and is liable for an addition to tax of

[*2] $2,010 under section 6651(a)(1)[1] for failure to timely file a return and an accuracy-related penalty of $5,011 under section 6662(a).  After concessions,[2] the issues for decision are:

1.  Whether petitioner may deduct as charitable contributions for 2012 $39,979 that remains in dispute after respondent's concessions.  We hold that he may to the extent stated below.

2.  Whether, for taxable year 2012, petitioner is liable for an addition to tax under section 6651(a)(1) for failure to timely file an income tax return.  We hold that he is.

3.  Whether, for taxable year 2012, petitioner is liable for a penalty under section 6662(a).  We hold that he is not.[3]

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect at all relevant times.  Rule references are to the Tax Court Rules of Practice and Procedure.  We round some monetary amounts to the nearest dollar. Petitioner resided in Maryland when the petition was filed.

[2]Respondent determined that petitioner overstated his itemized deductions for 2012 by $62,407.  After respondent's concessions, $39,979 remains in dispute.

[3]This case was tried before another Judge who is no longer serving with this Court.  The parties consented to having the case decided by Judge John O. Colvin on the basis of the record of trial.

**[*3]**                                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.      Petitioner and His Evangelism Activities

Petitioner graduated from the U.S. Naval Academy in 1959 and served in the U.S. Air Force for more than 26 years. From 1959 to 1980 he logged more than 3,000 flight hours. He became very active in the Catholic Church after he retired from the U.S. Air Force in 1986. He frequently attended church-related meetings, participated in community-outreach efforts, and assisted various church officials. In 1987 petitioner was certified as a teacher and trainer for the Catholic Church following his completion of a 16-week Catholic evangelization trainer's program offered by Franciscan University of Steubenville, a Catholic university in Steubenville, Ohio.

Since 1987 petitioner has dedicated his life to being an evangelist. Petitioner seeks to spread the teachings of the Catholic Church through random interactions with members of the general public. He considers all of his contact with members of the public to be opportunities for evangelism. He wears a large and visible crucifix at all times which identifies his religious affiliation and commitment to evangelism. Petitioner evangelizes people he happens to see when he engages in otherwise personal activities, such as when he eats in restaurants,

[*4] travels, and pilots private planes. He usually does not know in advance whom he will evangelize. Petitioner evangelizes and discusses his faith with friends, members of his extended family, and members of the religious organization that he founded, see infra, and the Catholic Church.

Petitioner visited some persons in hospitals and nursing homes and one prisoner during 2012 to offer spiritual and financial support. He did not keep a record of the visits. He did not deduct any expenses relating to his visits to hospitals or nursing homes during 2012, except for mileage.

B.    The Brothers and Sisters of the Divine Mercy

In 1987 petitioner cofounded the Brothers and Sisters of the Divine Mercy (BSDM). BSDM was incorporated in Maryland in 2003.

BSDM's corporate charter states in part as follows: "The Corporation will provide religious and spiritual counseling to people of need, including prison inmates and hospital patients, and provide guidance to people counseled after release from prison or from the hospital." According to its mission statement, BSDM is responsible to the Pontifical Council of the Laity, a dicastery of the Catholic Church. Nothing in the record shows that the Catholic Church recognized or had any formal relationship to BSDM.

**[*5]** During 2012 petitioner was president and brother superior of BSDM and was one of its three directors. BSDM also had an acting vice president and an acting treasurer. BSDM had 13 members in addition to petitioner during 2012: 11 in the United States and 2 in Paraguay. BSDM had no office outside petitioner's home.

C.    Connection of the Catholic Church and BSDM to Petitioner's Evangelism Activities

Petitioner did not seek or obtain approval in advance from the Catholic Church regarding any aspect of his evangelism activities, and he was not required to report afterwards to the Catholic Church about those activities.

Petitioner met with other members of BSDM a number of times not specified in the record during 2012. At those meetings they discussed each other's evangelization activities. BSDM did not select or approve the methods petitioner used to evangelize, who he evangelized, or the expenses he incurred while evangelizing. Neither the Catholic Church nor BSDM provided petitioner with contemporaneous written acknowledgments for any of his expenses for 2012.

D.    Petitioner's Charitable Contribution Deductions

Petitioner deducted as charitable contributions the unreimbursed expenses which he contends he incurred in connection with evangelism. Petitioner divided

[*6] these expenses into 13 categories and gave each category a caption (e.g., the caption for the category comprising most of his airplane rental and training expenses is "Evangelization: Christian Outreach"). Respondent does not agree that petitioner's captions for the 13 categories correctly characterize the expenses. We have added a caption for each category based on the goods or services petitioner purchased (e.g., what petitioner characterized as "Evangelization--Christian Outreach" we call "Airplane Rental and Training"). For the convenience of the parties, we also have retained petitioner's 13 captions in parentheses, but our retention of petitioner's captions does not bear on whether the expenses within each category are deductible. We also changed the order of the 13 groups to better fit into three broader categories (transportation, airplane, and meals expenses; payments to or for individuals; and communications and administrative expenses). Petitioner's expenses are as follows.

1. Transportation, Airplane, and Meals Expenses

   a. Airplane Rental and Training ("Evangelization: Christian Outreach"--Petitioner's Group No. 6)

Petitioner deducted $15,082 for expenses that he characterized as "Evangelization: Christian Outreach". These expenses were incurred in connection with petitioner's rental of private airplanes both for travel purposes

[*7] and for pilot training undertaken by petitioner to meet licensing and safety requirements.

Petitioner enjoys flying. He kept a flight log for 2012 showing the departure and arrival airports for each of his flights, the number of times he landed his plane during each rental period, and the purpose of each rental.

| Date | Purpose | Amount paid | Number of landings |
|------|---------|-------------|--------------------|
| 1/7 | Training | $401 | 2 |
| 1/19 | Training | 200 | 2 |
| 1/31 | Training | 512 | 2 |
| 2/2 | Training | 267 | 2 |
| 2/3 | Purchase | 25 | n/a |
| 2/7 | Training | 374 | 2 |
| 2/13 | Purchase | 6 | n/a |
| 2/14 | Training | 174 | 5 |
| 2/20 | Training | 731 | 3 |
| 2/22 | Training | 145 | 3 |
| 3/1 | Training | 343 | 3 |
| 3/1 | Purchase | 58 | n/a |
| 3/8 | Course purchase | 370 | n/a |
| 3/22 | Training | 147 | 5 |
| 3/27 | Training | 668 | 2 |
| 4/5 | Training | 210 | 1 |

[*8]

| | Date | Type | | |
|---|---|---|---|---|
| | 4/16 | Purchase | 17 | n/a |
| | 4/19 | Training | 200 | 7 |
| | 4/30 | Training | 86 | 3 |
| | 5/3[1] | Training | 228 | 2 |
| | 5/3 | Training | 129 | 2 |
| | 5/10 | Training | 172 | 2 |
| | 5/11 | Training | 172 | 2 |
| | 5/12 | Training | 227 | 2 |
| | 5/17 | Training | 621 | 2 |
| | 5/17 | Purchase | 162 | n/a |
| | 5/21 | Purchase | 58 | n/a |
| | 5/25 | Training | 227 | 5 |
| | 5/27 | Training | 113 | 3 |
| | 5/28 | Training | 227 | 4 |
| | 6/8 | Training | 272 | 4 |
| | 6/14 | Training | 373 | 5 |
| | 6/17 | Training | 678 | 2 |
| | 6/21 | Training | 385 | 5 |
| | 6/27 | Training | ([2]) | 4 |
| | 6/28 | Training | ([2]) | 2 |
| | 7/16 | Training | 329 | 5 |
| | 7/30 | Training | --- | 1 |
| | 7/30 | Purchase | 41 | n/a |
| | 8/9 | Training | 350 | 5 |

[*9]

| 8/14 | Training | 461 | 6 |
|---|---|---|---|
| 9/20 | Training | 274 | 1 |
| 9/26 | Training | 465 | 5 |
| 10/10 | Training | --- | 5 |
| 10/11 | Training | 358 | 10 |
| 11/14 | Training | 243 | 3 |
| 12/3 | Training | 260 | 12 |
| 12/3 | Purchase | 33 | n/a |
| 12/18 | Training | 346 | 1 |

[1]On May 3, 2012, petitioner flew twice, from two different airports, for training purposes.
[2]Petitioner deducted the cost of this rental as a temporary assignment. See infra p. 13.

Petitioner randomly evangelized people with whom he came into contact when he was engaged in training flights, such as airport staff and his pilot training instructors.

Petitioner rented planes three times in 2012 for nontraining purposes. On July 23, 2012, petitioner rented a plane to provide an "area tour for Amelia." Amelia is not identified in the record. Petitioner deducted $126 for this trip. On July 28, 2012, petitioner rented a plane and flew Monsignor Rossi, Rector at the Basilica of the National Shrine of the Immaculate Conception (Basilica) in Washington, D.C., to New Jersey to officiate at the funeral of the Monsignor's

[*10] cousin.  Petitioner deducted $1,432 for this trip, but he did not provide a contemporaneous written acknowledgment of this contribution from the Catholic Church or BSDM.  On August 20, 2012, petitioner flew Victor Polizzi, a member of his Biblical theology class, to Ocean City for lunch.  Petitioner deducted $605 for this trip.

b. Other Flying-Related Expenses ("Evangelization:  Christian Outreach Support"--Petitioner's Group No. 9)

Petitioner deducted $3,299 for expenses he characterized as "Evangelization:  Christian Outreach Support", which comprises the expenses of his private airplane rentals that were not included above, airplane equipment costs, and expenses incurred for meals, lodging, train tickets, clothes, and parking.  Petitioner purchased a jacket for the son of a BSDM member and paid to rent a plane to fly his car mechanic, Wayne Lopez, to Ocean City, Maryland.

c. Automobile Expenses ("Pastoral Ministry:  Transportation"-- Petitioner's Group No. 1)

Petitioner deducted $1,292 for expenses that he characterized as "Pastoral Ministry:  Transportation".  Petitioner owned two vehicles in 2012:  a 1992 Toyota Camry and a 2009 Toyota Venza.

These expenses comprise automobile traveling expenses of $983.36 for automobile mileage to and from airports, and $309 for highway tolls, parking

[*11] expense at Baltimore-Washington International Airport, and a car wash. The $309 amount includes all of the highway tolls, parking, and car washing expenses petitioner paid during 2012. During 2012 petitioner drove the Camry 4,175 miles and the Venza 18,811 miles. In computing the amount of his deduction petitioner computed the deduction for mileage using a rate of 14 cents per mile.[4]

Petitioner did not maintain a contemporaneous mileage log showing the purpose of any of his automobile travel. However, he maintained records showing that during 2012 he made 38 round trips of 33 miles one way from his home to the Basilica. On each of these trips he read at Catholic masses or was a Eucharistic minister.[5] Petitioner also drove Monsignor Rossi 236 miles round trip from Annapolis, Maryland, to Ocean City, Maryland, to view a property that had been donated to the Basilica.[6]

---

[4]The standard mileage rate is 14 cents for purposes of computing the sec. 170(a) deduction for mileage in connection with a charitable contribution. See sec. 170(i); Rev. Proc. 2010-51, sec. 5.01, 2010-51 I.R.B. 883, 885; Notice 2012-1, sec. 2, 2012-2 I.R.B. 260, 260.

[5]We take judicial notice that the distance from petitioner's home in Maryland to the Basilica is 33 miles (one way). See Fed. R. Evid. 201(b).

[6]At trial before another Judge, the Court reserved ruling on the admission of Exhibit 25-P, which consists of a series of email messages petitioner sent in 2012.

(continued...)

**[*12]**      d.      <u>Meals, Coffee, and Snacks ("Evangelization:  Counseling"--</u>
<u>Petitioner's Group No. 10)</u>

Petitioner deducted $5,228 for expenses that he characterized as

"Evangelization:  Counseling".  These expenses comprise petitioner's payments

for every restaurant meal he ate in 2012, including meals he ate with members of

his extended family, and also the costs of snacks and coffee when he met with

several individuals, including BSDM members.  Petitioner provided meals and

coffee for others while he was providing spiritual counseling and discussing his

faith and evangelism.

On some, but not all, of his restaurant and coffee receipts petitioner wrote

the name or names of the person or persons with whom he had the meal or coffee.

Petitioner testified that he tried to "talk [to them] and find out what's going on" in

their lives.  Petitioner testified that he paid for snacks when meeting with BSDM

members to discuss what they were doing in their ministry.  Petitioner often left

large tips because he wanted servers to "think * * * that God cares for them and

they're very special."  The record contains five receipts on which petitioner wrote

---

[6](...continued)
Those messages include communications with Monsignor Rossi regarding the
drive to Ocean City.  There being no remaining objection, we now admit Exhibit
25-P into evidence.  We also take judicial notice that the distance from Annapolis,
Maryland, to Ocean City, Maryland is 118 miles.  <u>See</u> Fed. R. Evid. 201(b).

[*13] the name of the server as the only person with whom petitioner had contact at a meal.

e. Travel Expenses ("Evangelization: Temporary Assignments"--Petitioner's Group No. 13)

Petitioner deducted $7,151 for expenses of six trips that he characterized as "Evangelization: Temporary Assignments". These trips were to Colorado; Florida; Aberdeen, Maryland; New York; Texas; and North Carolina. His expenses include the costs of commercial airline tickets, private airplane rentals, car rentals, lodging, and meals.

Petitioner went to Colorado to learn to fly in a mountainous area. He went to Texas to attend his daughter-in-law's family reunion and to New York to visit his sister-in-law. During his New York trip he paid for and deducted as a charitable contribution a birthday lunch for his sister-in-law. Petitioner went to Florida to visit and counsel Marla Benkovich. The record includes no specific information about the purposes of his trips to Aberdeen, Maryland, or North Carolina except for his general statement that everything he did related to evangelization. Neither the Catholic Church nor BSDM instructed petitioner to take any of these trips.

[*14] 2.    Payments to or for Individuals

a.    Gifts and Payments to Others ("Evangelization:  Charitable Grants"--Petitioner's Group No. 11)

Petitioner deducted $7,910 for expenses that he characterized as "Evangelization:  Charitable Grants", which comprise his payments for clothes, groceries, lodging, traveling, and other miscellaneous gifts for other people.

Petitioner paid $1,000 to Marla Benkovich for the cost of her lodging and telephone service during her stay in Maryland.  He also paid for her meals and groceries during that trip, gave her a money order for $30, paid $114.75 to Sam's Club and $169 for contact lenses for her, and paid for a gift for her daughter Marta.  Petitioner paid travel expenses for and gave $1,485 in cash to Sister Lila Nunez, a BSDM member from Paraguay, for a trip to Washington, D.C., to attend the celebration of BSDM's 25th anniversary.

Petitioner gave a $500 gift card from Bass Pro Shops to Tom Eveler, a retired police officer.  He paid $700 for sailing school fees for Anne-Marie Kasuda and paid $24 for movie tickets.

**[\*15]**     b.     <u>Maintenance Expenses for St. Mary's Church and the Home of a BSDM Member ("Evangelization:  Mission Support"-- Petitioner's Group No. 12)</u>

Petitioner spent $1,335 for items which he characterized as "Evangelization: Mission Support".  This category includes petitioner's purchases of home maintenance items for Sister Kathleen Sheldon, a BSDM member.  Petitioner did not get a contemporaneous written acknowledgment of these expenses from the Catholic Church or BSDM.

This category also includes $224 for maintenance at St. Mary's Catholic Church in Annapolis, Maryland, which respondent concedes petitioner may deduct.

c.     <u>Printed Material and Gifts ("Pastoral Ministry:  Audio Visual Media"--Petitioner's Group No. 4)</u>

Petitioner deducted $2,587 for the cost of printed material and gifts for persons he evangelized.  He characterized these expenses as "Pastoral Ministry: Audio Visual Media".  This included the costs of Christmas ornaments and religious books and videos which he gave to people he evangelized.  He did not have the approval of BSDM or the Catholic Church before making these gifts.

Petitioner paid $1,056 for 1,000 copies of a Spanish language religious pamphlet which he gave to Sister Lila Nunez to distribute in Paraguay.  He paid

[*16] $112 for a subscription to a local newspaper, $25 to RBC Ministries,[7] and $6 to a jewelry store to repair his crucifix.

    3.      Communications and Administrative Expenses

        a.      Insurance and Legal Expenses ("Pastoral Ministry: Professional Expenses"--Petitioner's Group No. 2)

Petitioner deducted an amount for expenses that he characterized as "Pastoral Ministry: Professional Expenses", which comprise: $297 for an umbrella insurance policy covering petitioner and his then wife from personal liabilities, $1,615 for legal fees incurred in connection with an audit of his personal income tax return, and $284 paid to CT Corp. for serving as BSDM's registered agent for receipt of legal documents in Maryland.

        b.      Office Supplies and Refreshments ("Pastoral Ministry: Office Expenses"--Petitioner's Group No. 3)

Petitioner deducted $1,378 for expenses that he characterized as "Pastoral Ministry: Office Expenses". These expenses include the costs of office supplies such as paper, books, pens, and computer equipment, which were almost all used in petitioner's home. Petitioner did not report or account for his office expenses to either the Catholic Church or BSDM. This category also includes food items,

---

[7]The receipt from RBC Ministries states that this payment was a donation. Petitioner provided no evidence regarding the purpose of this payment.

[*17] such as cookies and pies, that petitioner served at Biblical theology classes held in the home of a member of BSDM.

      c.      Shipping ("Pastoral Ministry:  Shipping"--Petitioner's Group No. 5)

Petitioner deducted $200 for payments to Fed Ex and UPS that he characterized as "Pastoral Ministry:  Shipping".  Some of the expenses were paid to ship items to his sister-in-law, his doctor, and a person assisting with the administration of the estate of Cathy Milligan, a deceased sister of BSDM.

      d.      Communications ("Evangelization:  Communications"--Petitioner's Group No. 7)

Petitioner deducted $3,567 for expenses that he characterized as "Evangelization:  Communications".  This amount comprises the costs of petitioner's home telephone, a separate line for a fax machine, and a cell phone. Petitioner had no other telephones or telecommunication devices for his personal use during 2012.  Petitioner used the three lines for some personal calls and faxes, such as to speak with his doctor, family members, and friends, and to his lawyers regarding the audit of his personal income tax return.  Petitioner did not keep a record of his personal use of the telephone lines.

**[*18]**      e.      <u>Internet and Cable Service in Petitioner's Home</u> <u>("Evangelization:  Evangelization Support"--Petitioner's Group</u> <u>No. 8)</u>

Petitioner deducted $730 for internet and cable television service in his home, which he characterized as "Evangelization:  Evangelization Support". Petitioner used the internet to send emails to those to whom he ministered, send weekly emails containing religious thoughts and news to BSDM's mailing list, check the weather, shop online, and watch religious videos.  Petitioner used the cable televison service to obtain weather information for flying and to view religious programs.  Petitioner had no separate internet or cable service for his personal use during the year at issue.

E.      <u>Petitioner's 2012 Federal Income Tax Return</u>

Petitioner's 2012 Form 1040, U.S. Individual Income Tax Return, was originally due on April 15, 2013.  Petitioner timely filed a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, which extended the due date for filing his 2012 return to October 15, 2013. Petitioner filed his Form 1040 for 2012 on August 16, 2014, which was 10 months after the extended due date.  On that return he reported tax liability of $7,074.

On Schedule A, Itemized Deductions, attached to that return, he deducted charitable contributions as follows:  $3,240 in cash contributions, $90 in

[*19] contributions other than cash, and $62,407 on line 18, the line for carryforward contributions from 2011. The parties agree that petitioner did not have a carryover contribution from 2011 and that the amount he reported on Schedule A, line 18, represents the unreimbursed expenses that are at issue here. Petitioner reduced the $62,407 to $44,189 because of the limits on the deduction of charitable contributions under section 170(f).[8]

OPINION

Petitioner contends that he is entitled to deduct $39,979 in charitable contributions under section 170 in excess of the amount respondent allowed. Petitioner also contends that he is not liable for the addition to tax for failure to timely file his 2012 tax return under section 6651(a)(1) or the accuracy-related penalty under section 6662(a). We will first decide whether or to what extent his unreimbursed expenses for evangelization are deductible as charitable contributions.

---

[8]Respondent's previous audits of petitioner's tax returns for 2008 and 2010 resulted in this Court's entering stipulated decisions reflecting deficiencies. See Oliveri v. Commissioner, T.C. Dkt. No. 14773-08S (Apr. 27, 2009); Oliveri v. Commissioner, T.C. Dkt. No. 3494-11S (Oct. 13, 2011).

**[\*20]** A.     <u>Charitable Contribution Deductions</u>

Section 170(a) permits the deduction of "any charitable contribution" made by a taxpayer for contributions or gifts "to or for the use of" a charitable organization.  Sec. 170(c).  Amounts paid to a charity for the benefit of a specified individual are generally not deductible as charitable contributions, regardless of the circumstances of the recipient or the intent of the donor.  <u>Tripp v. Commissioner</u>, 337 F.2d 432 (7th Cir. 1964), <u>aff'g</u> T.C. Memo. 1963-244; <u>Thomason v. Commissioner</u>, 2 T.C 441, 443-444 (1943).  In contrast, an unreimbursed expenditure incident to the rendition of services to a qualified charitable organization may be deductible under section 170.  Sec. 1.170A-1(g), Income Tax Regs.  Such expenditures include, for example, "transportation expenses necessarily incurred in performing donated services".  <u>Id.</u>  In order to be deductible an unreimbursed expense must be directly connected with and solely attributable to a service provided to an organization to which contributions are deductible.  <u>See</u> sec. 1.170A-1(g), Income Tax Regs.; <u>see also</u> <u>Van Dusen v. Commissioner</u>, 136 T.C. 515, 525 (2011); <u>Saltzman v. Commissioner</u>, 54 T.C. 722, 724 (1970).

**[\*21]** B.  Whether or to What Extent Petitioner May Deduct Expenses He Incurred in 2012 Which He Contends Were Related to Evangelization

Petitioner contends that he may deduct all of the disputed amount of his expenses, which he claims were incurred in connection with his evangelism. Specifically, he contends that: (1) his expenses were in no part personal, (2) his expenses were incident to his rendition of services to BSDM or the Catholic Church, (3) the contemporaneous written acknowledgment requirement, section 170(f)(8) and section 1.170A-13, Income Tax Regs., does not apply to unreimbursed expenses, and (4) respondent's disallowance of his charitable contribution deductions violates the First Amendment to the Constitution. Respondent concedes that BSDM is tax exempt under section 501(c)(3) and that petitioner provided receipts or other records which adequately substantiate the amounts of his reported expenses. Respondent contends that (1) most of petitioner's expenses were at least in part personal; (2) petitioner's unreimbursed expenses were not contributions "to or for the use of" either BSDM or the Catholic Church because of the absence of coordination or supervision as described in Van Dusen v. Commissioner, 136 T.C. at 523, 525, and Smith v. Commissioner, 60 T.C. 988 (1973); (3) petitioner's expenses of $250 or above are not deductible because petitioner did not receive a contemporaneous written acknowledgment

**[*22]** from the Catholic Church or BSDM for the expense; and (4) respondent's conduct of this case has not violated petitioner's constitutional rights.

1.     Personal Expenses

A contribution is not deductible if the primary purpose is to obtain a personal benefit for the taxpayer.  Babilonia v. Commissioner, 681 F.2d 678, 679 (9th Cir. 1982), aff'g T.C. Memo. 1980-207; Allen v. United States, 541 F.2d 786, 788 (9th Cir. 1976); Tate v. Commissioner, 59 T.C. 543, 550 (1973); Seed v. Commissioner, 57 T.C. 265, 275-276 (1971).  Expenses which are incurred incident to rendering services to a charitable organization are considered to have a dual character if they benefit both the charity and the taxpayer.  See, e.g., Churukian v. Commissioner, T.C. Memo. 1980-205.  For the expense to be deductible, the charity, rather than the taxpayer, must receive the primary benefit of the expenditure.  Babilonia v. Commissioner, 681 F.2d at 679.  When a claimed charitable contribution deduction arises from an expense that is in part personal and in part charitable, the burden of proof is on the taxpayer to show that the expense is attributable to the charitable use.  Orr v. United States, 343 F.2d 553, 557-558 (5th Cir. 1965).  Failure to prove that an expense would not have been incurred absent the charitable use bars a taxpayer's claim for a charitable contribution deduction.  Id. at 558.

[*23] Costs of traveling away from home (including transportation, meals, and lodging) are not deductible unless they qualify as expenses deductible, as relevant here, under section 170 and regulations thereunder. Sec. 1.262-1(b)(5), Income Tax Regs. A charitable deduction for unreimbursed travel expenses is denied where the taxpayer derives substantive personal pleasure while on trips. Saltzman v. Commissioner, 54 T.C. at 725. For purposes of rendering donated services, "while away from home" has the same meaning as in section 162(a)(2). Sec. 1.170A-1(g), Income Tax Regs. If the purpose of a trip is primarily personal, the travel expenses are not deductible even though the taxpayer performs charitable services while at the destination. See sec. 1.162-2(b), Income Tax Regs. Meals and other travel expenses are not deductible where there is a substantial direct personal benefit to the taxpayer. See Seed v. Commissioner, 57 T.C. at 275-276; Sheffels v. United States, 264 F. Supp. 85 (E.D. Wash. 1967), aff'd, 405 F.2d 924 (9th Cir. 1969); see also sec. 1.170A-1(g), Income Tax Regs.

Petitioner treated the expenses of a wide range of things he did, such as his flying lessons, all of his restaurant meals in 2012, travel to visit his family members, and home internet and telephone service, as expenses of evangelism. Most of petitioner's expenses were incurred in whole or in part for personal purposes and therefore do not qualify for deduction under section 170.

**[\*24]** 2.    <u>Whether Expenses Were Incurred in Coordination With or Supervised by a Charitable Organization</u>

To be deductible under section 170, a contribution must be "to or for the use of" a charitable organization. In order to meet this requirement, the expense must be subject to coordination, supervision, or oversight by the organization. <u>Van Dusen v. Commissioner</u>, 136 T.C. at 523-524.

Courts have applied several factors in deciding whether a taxpayer provided services "to or for the use of" an organization, including: (1) "the strength of the taxpayer's affiliation with the organization", (2) "the organization's ability to initiate or request services from the taxpayer", (3) "the organization's supervision over the taxpayer's work", and (4) "the taxpayer's accountability to the organization". <u>Id.</u> at 523; see <u>Smith v. Commissioner</u>, 60 T.C. 988. The charity must direct or encourage the taxpayer to perform the charitable services. <u>Saltzman v. Commissioner</u>, 54 T.C. at 723-724. We consider these factors and any other relevant circumstances in deciding whether to view the taxpayer's unreimbursed expenses as sufficiently coordinated by, or the taxpayer is sufficiently accountable to, the charitable organization for the contribution to be considered to be "to or for the use of" the organization. <u>Van Dusen v. Commissioner</u>, 136 T.C. at 523-524. We refer to this as the "coordination" factor.

**[\*25]** Petitioner contends that because the taxpayers' unreimbursed expenses for evangelical activities were deductible in Smith v. Commissioner, 60 T.C. 988, and Orr v. United States, 343 F.2d 553, his unreimbursed expenses also are deductible. We disagree. The facts in those cases contrast sharply with the facts here. In Smith v. Commissioner, 60 T.C. at 989, Mr. Smith was a member of a local church organization (an "assembly") which had well-established procedures for coordinating the evangelical activities of certain of its members. Mr. Smith took trips to Newfoundland, Canada, with his wife and children and several young men who joined them in Newfoundland. Id. at 991. Mr. Smith selected that geographic area because he believed that the large number of low-income people living there would respond to his preaching. Id. at 990. His wife assisted with cooking and other arrangements for the group.

According to its usual practice, Mr. Smith's assembly provided him with letters of introduction ("commendation") directed to religious groups along his route in Maine, Vermont, and Nova Scotia, Canada, written by one member of his assembly and countersigned by another member. Because no assembly existed in the area Mr. Smith's group would be visiting, according to its usual practice his assembly addressed the letter of commendation to "those gathered to the name of the Lord Jesus Christ". Id.

**[\*26]** In Newfoundland Mr. Smith and his volunteers often held three meetings per day, each attended by 10 to 150 people. After he returned home Mr. Smith reported back to his assembly, which publicized his efforts and accomplishments to other assemblies affiliated with his assembly. Id. at 991.

We held that the travel expenses Mr. Smith incurred on these trips were deductible. Id. at 992-995. Mr. Smith's evangelistic activities were sufficiently coordinated with his assembly, and his evangelism was "not merely * * * [his] 'own personal religious enterprise' but was an undertaking which was approved, encouraged, and aided by his local church." Id. at 994. We held that Mr. Smith's trips were taken on behalf of his assembly and that, for purposes of section 170, he rendered services "to or for the use of" his assembly. See id. at 993.

In contrast to Mr. Smith's evangelism activities, petitioner's were mostly random and uncoordinated by either the Catholic Church or BSDM. Mr. Smith incurred expenses in order to evangelize; in contrast, petitioner evangelized during the course of his usual personal activities. Petitioner did not sufficiently coordinate his expenses with either BSDM or the Catholic Church for expenses to be considered to be "to or for the use of" either of those organizations.

**[*27]** 3. <u>Substantiation</u>

A taxpayer must substantiate the amounts of unreimbursed expenses incurred while rendering services to a charity in order for the expenses to be deductible. Charitable contribution deductions are subject to the recordkeeping requirements of section 1.170A-13(a), Income Tax Regs., for contributions of money or section 1.170A-13(b), Income Tax Regs., for contributions of nonmoney property. Charitable contributions of unreimbursed out-of-pocket expenses of less than $250 are governed by section 1.170A-13(a), Income Tax Regs. <u>Van Dusen v. Commissioner</u>, 136 T.C. at 531. No deduction is allowed under section 170(a) for a contribution of $250 or more unless the taxpayer substantiates the contribution with a contemporaneous written acknowledgment from the donee organization.[9] Sec. 170(f)(8)(A); <u>Van Dusen v. Commissioner</u>, 136 T.C. at 536. A taxpayer who incurs unreimbursed expenditures incident to the rendition of services is treated as

---

[9]This requirement does not apply "if the donee organization files a return, on such form and in accordance with such regulations as the Secretary may prescribe, which includes the information" required to be included in a contemporaneous written acknowledgment. Sec. 170(f)(8)(D). Sec. 170(f)(8)(D) was repealed effective for contributions made in tax years beginning after December 31, 2016. <u>See</u> Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, sec. 13705(a), 131 Stat. at 2169. Petitioner has not argued, and the record contains no evidence, that BSDM or the Catholic Church filed a return that included the information required by sec. 170(f)(8)(B) such that this substantiation requirement would not apply.

**[*28]** having obtained a contemporaneous written acknowledgment of those expenditures if the taxpayer (1) has adequate records to substantiate the amounts of the expenditures; and (2) obtains (a) a statement prepared by the donee organization containing a description of the services provided by the taxpayer, (b) a statement of whether the donee organization provides any goods or services in consideration, in whole or in part, for the unreimbursed expenditures, and (c) a description and good faith estimate of the value of those goods or services, and if the donee organization provides any intangible religious benefits, a statement to that effect. Sec. 1.170A-13(f)(10), Income Tax Regs. Because petitioner did not obtain any contemporaneous written acknowledgments, his expenses of $250 or more are not deductible.

Petitioner points out that the contemporaneous written acknowledgment requirement of section 170(f)(8) applies to "contributions" and contends that it does not apply to unreimbursed expenses because the statute provides that acknowledgments are required for "contributions" over $250, not for "'out-of-pocket' expenditures." We disagree with that contention because an unreimbursed, "out-of-pocket" expense made incident to the rendition of services to an organization is deductible only if it is a "contribution", and the deductibility

[*29] of charitable contributions is subject to the substantiation requirements of section 170(f)(8). Sec. 1.170A-1(g), Income Tax Regs.

Petitioner contends that the reporting provisions of section 1.170A-13, Income Tax Regs., require only substantial compliance. The substantial compliance doctrine applies to unreimbursed volunteer expenses of less than $250, Van Dusen v. Commissioner, 136 T.C. at 534-535, but in Averyt v. Commissioner, T.C. Memo. 2012-198, 2012 WL 2891077, at *4, we said that it does not apply to contributions of $250 or more.

Petitioner contends that a contemporaneous written acknowledgment from BSDM would be superfluous because he was cofounder and president of BSDM. Therefore, according to petitioner, "he should not be penalized for not having a letter from himself, to himself, to document the expenditures on behalf of * * * BSDM". If this statement is taken to its extreme, petitioner could be understood to contend that, since he founded and led an organization exempt from taxation under section 501(c)(3), that all of his personal expenses for travel, flying lessons, restaurant meals, and expenditures for gifts to numerous people, including many of his organization's volunteers and members of their families, are "to or for the use of" a charitable organization for purposes of section 170. Petitioner cites no authority for this sweeping proposition. At a minimum, we can easily conclude

[*30] that there is no exception to section 170(f)(8)(A) for self-created organizations.[10]

We next apply these standards to several of the expenses described above.

C.    Transportation, Airplane, and Meals

    1.    Private Aircraft Rental and Flying Lessons ("Evangelization: Christian Outreach"--Petitioner's Group No. 6); Other Flying-Related Expenses ("Evangelization:  Christian Outreach Support"-- Petitioner's Group No. 9)

Petitioner incurred expenses of $15,082 for aircraft rental (which he characterized as "Evangelization:  Christian Outreach") and $3,299 for flight-related expenses (which he characterized as "Evangelization:  Christian Outreach Support").

Petitioner testified that he "like[s] flying", but emphasizes that his rental of small aircraft was not "for [his] personal use at all * * * it's all for my work for God."  According to petitioner, his flying enabled him to visit small airports and distant places to evangelize people who otherwise had no access to his preaching.

---

[10]Petitioner testified that he accounted only to God for his evangelistic work and that "getting approval from * * * [BSDM] would be getting approval from himself".  Since BSDM provided no contemporaneous written acknowledgments to petitioner, we need not consider what significance we would attribute to a statement from an organization controlled by the taxpayer.

[*31] Most of petitioner's expenses in this category involve training flights. The expenses associated with these flights are primarily personal and do not constitute gifts "to or for the use of" a charity. See Orr, 343 F.2d at 557.

Petitioner testified that when he flew with Wayne Lopez (his mechanic), Victor Polizzi (a member of petitioner's Biblical studies class), and the Monsignor, he had wonderful conversations about their faith. But these flight expenses are not made "to or for the use of" a charitable organization merely because petitioner discusses religion while conducting the activity. The charitable contribution deduction is disallowed where, as here, there is a substantial personal benefit to the taxpayer. See Saltzman v. Commissioner, 54 T.C. at 725; Seed v. Commissioner, 54 T.C. at 276. In addition the charitable contribution deduction does not apply to the expenses of flying Mr. Lopez and Mr. Polizzi or buying a jacket for the son of a BSDM member because those individuals were apparently selected by petitioner because of his personal relationships with him. Thomason v. Commissioner, 2 T.C. at 443-445; see also Seed v. Commissioner, 57 T.C. at 275-276; Sheffels, 264 F. Supp. at 88-89. As to the jacket for the son of a BSDM member, petitioner cited no authority that persons who are active in BSDM or members of their family are suitable objects of charity. Finally, the expenses were not "to or for the use of" the Catholic Church or BSDM because neither

[*32] organization provided meaningful coordination or supervision of those activities. See Van Dusen v. Commissioner, 136 T.C. at 523-524.

Flying Monsignor Rossi to New Jersey to officiate at a funeral was a service to the Catholic Church, but the expenses of that trip (as well as the trips with Mr. Polizzi and Mr. Lopez) are not deductible because the cost of each trip exceeded $250 and petitioner did not obtain a contemporaneous written acknowledgment of the services from the Catholic Church or BSDM as required by section 1.170A-13(f)(10), Income Tax Regs. See Van Dusen v. Commissioner, 136 T.C. at 536-537.

2.   Automobile Expenses ("Pastoral Ministry:  Transportation"--Petitioner's Group No. 1)

Petitioner deducted automobile expenses totaling $1,378. Petitioner testified and contends that 100% of his vehicle use related to his evangelization activities and that every time one of his cars passed through a toll booth the trip was for the purpose of evangelization.

Petitioner made 38 round trips of 68 miles each (totaling 2,584 miles) to the Basilica to read at masses and act as a Eucharistic minister, for which he claimed a deduction for mileage of $362 (2,584 miles at 14 cents per mile). Expenses of commuting to church to participate in a choir at Sunday services are a form of

**[*33]** religious worship and are not deductible as charitable contributions. Churukian v. Commissioner, T.C. Memo. 1980-205. Petitioner has provided no argument or authority that we should distinguish his activities from those in Churukian.

Petitioner drove numerous times from his home to and parked at various airports. Because, as discussed above, the expenses of most of petitioner's flights were personal and nondeductible, these expenses also are not deductible. See Orr, 343 F.2d at 558; Cavalaris v. Commissioner, T.C. Memo. 1996-308, slip op. at 18.

3. Meals, Snacks, Coffee ("Evangelization: Counseling"--Petitioner's Group No. 10)

Petitioner spent $5,228 for the items in this category which he characterized as "Evangelization--Counseling". This category includes the cost of every meal he ate in a restaurant in 2012. Petitioner incurred some of these expenses while he initiated conversations in which he endeavored to provide counseling with persons he had not previously met, including on several instances the wait staff serving him during the meal.

The cost of eating in a restaurant is a personal expense and is not made deductible by evangelizing persons randomly encountered while eating. A taxpayer may deduct reasonable expenses for meals and lodging while performing

[*34] donated services, provided that the taxpayer satisfies the "away from home" test under section 162 and the regulations thereunder. Sec. 1.170A-1(g), Income Tax Regs. However, petitioner has not shown which of his meals in 2012 he consumed while he was away from home as defined in section 162. See sec. 1.170-2(a)(2), Income Tax Regs. Finally, these expenses were not "to or for the use of" a charitable organization because the activity lacked sufficient coordination with the Catholic Church or BSDM. Therefore petitioner has not shown that he may deduct any of the expenses in this category.

4. Travel Expenses ("Evangelization: Temporary Assignments"-- Petitioner's Group No. 13)

Petitioner incurred $7,151 in expenses for five trips that he characterized as "temporary assignments". This includes travel expenses (including hotels, airfare, rental car, aircraft rental, and expenses for restaurants and groceries) for trips to Colorado (to practice flying in the mountains), New York and Texas (to visit family members), Florida (to counsel a BSDM member), and Maryland and North Carolina (for purposes not described in the record). We hold that these travel expenses were primarily personal and are not deductible as charitable contributions. See Seed v. Commissioner, 57 T.C. at 277-278; Sheffels, 264 F. Supp. at 88-89. Petitioner's expenses relating to a BSDM member are not

**[\*35]** deductible because expenses of providing services for individuals selected for personal reasons by the taxpayer are not deductible, and petitioner has provided no authority showing that members of BSDM qualify as recipients of charity. See Thomason v. Commissioner, 2 T.C. at 443-444. These expenses also are not deductible because the activity was not sufficiently coordinated with the Catholic Church or BSDM to be considered to or for the use of either of those organizations.

D.    Payments to or for Individuals

    1.    Gifts and Payments to Others ("Evangelization:  Charitable Grants"--Petitioner's Group No. 11); Maintenance Expenses at the Home of a BSDM Member and at St. Mary's Church ("Evangelization:  Mission Support"--Petitioner's Group No. 12)

Petitioner incurred expenses of $7,910 which he characterized as charitable grants and $1,335 which he characterized as mission support. These amounts were paid to provide a $500 gift card for Tom Eveler, $700 for sailing school fees for Ann-Marie Kasuda, a $1,485 wire transfer to Sister Lila Nunez, $1,066 to pay Marla Bankovich's hotel expenses, the cost of a ticket to a movie which petitioner attended with Sister Kathleen Sheldon, and $1,110.65 for maintenance at the home of BSDM member Sister Kathleen Sheldon. These expenses are not deductible because they were for individuals selected by petitioner for whom no substantial

**[*36]** charitable need was established, see Thomason v. Commissioner, 2 T.C. at 443-445; Cavalaris v. Commissioner, slip op. at 20, and, generally speaking, persons carrying on the work of a charitable organization are not proper objects of charitable activity of that organization. These expenses also are nondeductible because there was not sufficient coordination of the activity by the Catholic Church or BSDM to treat these expenses "to or for the use of" either of these organizations.

Petitioner spent $224.35 on repairs at St. Mary's Catholic Church in Annapolis. Respondent concedes that petitioner may deduct this expense.

2.  Gifts and Printed Material ("Pastoral Ministry: Audio Visual Media"--Petitioner's Group No. 4)

Petitioner incurred expenses for books and videos, Christmas ornaments which he donated to others, and religious pamphlets which he gave to another BSDM member. These expenses are not deductible because petitioner's activities were not sufficiently coordinated with the Catholic Church or BSDM to treat the expenses as "to or for the use of" either of those organizations.

Petitioner subscribed to a local newspaper. This expense was incurred primarily for personal reasons and is therefore nondeductible. Petitioner made a gift to RBC Ministries (not identified in the record) but did not establish a

[*37] charitable purpose for the gift. Finally, petitioner has provided no authority for his claim that he may deduct as a charitable contribution the cost of repairing his crucifix.

E.     Communications and Administrative Expenses

Petitioner deducted most of the expenses in these categories on the grounds that the expenses of the activities discussed above (such as flying, traveling, eating in restaurants, and gifts) were deductible as charitable contributions, and thus, petitioner argues, his communications and administrative expenses incurred to conduct those activities also are deductible. As discussed above, the costs of most of these activities are not deductible. Thus, the administrative expenses of carrying on the activities also are not deductible. Petitioner did not use his telephone, internet service, and office supplies exclusively for charitable purposes, and he would have paid these expenses whether or not he engaged in evangelism. Thus, those expenses would not be deductible even if petitioner's expenses of flying, traveling, and eating meals were deductible. See Orr, 343 F.2d at 557.

1.     Insurance and Legal Expenses ("Pastoral Ministry:  Professional Expenses"--Petitioner's Group No. 2)

Petitioner paid $4,196 in expenses for legal advice relating to an IRS audit of a prior year's return and an umbrella liability policy covering petitioner and his

[*38] former wife.  Petitioner testified that the legal fees were paid for the purpose of evangelization because "everything * * * [is] tied to evangelization."  We disagree; these expenses are nondeductible personal expenses.  The expenses of maintaining a corporate registered agent for BSDM in Maryland are deductible.

2.    Office Supplies and Refreshments ("Pastoral Ministry:  Office Expenses"--Petitioner's Group No. 3)

Petitioner deducted $1,329 for expenses which he characterized as "Pastoral Ministry:  Office Expenses".  Petitioner did not maintain a separate office for BSDM.  All of the items purchased in this category were kept in his home and petitioner admitted to some personal use of those items.  Petitioner has not established that substantial amounts of the expenses of his evangelical activities were deductible as charitable expenses.  Thus, we have no basis on which to allocate between the personal and charitable use of these items.  These expenses also are not deductible because neither the Catholic Church nor BSDM had sufficient connection with or oversight of these expenses.

3.    Shipping Costs ("Pastoral Ministry:  Shipping"--Petitioner's Group No. 5)

Petitioner paid for the rental of a post office box.  Petitioner shipped documents to his doctor, someone handling the estate for a deceased member of BSDM, Donna Oliveri, Marta Gwynn, and Saker Aviation.  These were

**[*39]** nondeductible personal expenses, and expenses of providing charitable services for individuals selected by a taxpayer are not deductible. Thomason v. Commissioner, 2 T.C. at 443-445.

4. Communications ("Evangelization: Communications"--Petitioner's Group No. 7); Internet and Cable Service ("Evangelization: Evangelization Support"--Petitioner's Group No. 8)

Petitioner paid $3,334 for a home telephone and a mobile phone and $973 for internet and cable television service. Petitioner contends that he may deduct these costs because he used the cable service for continuing education, which was necessary for his evangelization activities. We disagree; these expenses are not deductible because they produced a substantial, direct, personal benefit to petitioner. See Tate v. Commissioner, 59 T.C. at 550; Seed v. Commissioner, 57 T.C. at 276. In addition, these expenses would have been paid even absent petitioner's evangelization. Payments which petitioner would have made even if he had done no evangelizing do not qualify as gifts to or for the use of a charitable organization. See Orr, 343 F.2d at 557.

F. Whether Respondent's Denial of Petitioner's Charitable Contribution Deductions Violates the First Amendment to the Constitution

Petitioner contends that: (1) respondent violated the First Amendment of the Constitution and the Religious Freedom Restoration Act of 1993 (RFRA), Pub.

**[*40]** L. No. 103-141, 107 Stat. 1488, by treating his evangelistic activities as if they are not a service to the Catholic Church or BSDM and (2) respondent's audit of petitioner's return unconstitutionally discriminated against his religious beliefs.

    1.    <u>Treatment of Petitioner's Evangelism Activities Was Not Unconstitutional</u>

Petitioner contends that respondent is characterizing his evangelism as if it were not a religious activity and that respondent's characterization violates the First Amendment. Petitioner mischaracterizes respondent's position, which is that petitioner's expenses for evangelistic activities are not <u>deductible</u> as charitable contributions under section 170, not that they are not <u>religious</u> activities. Not all religious activities are services "to or for the use of" a religious organization for purposes of section 170. <u>See, e.g.</u>, <u>Churukian v. Commissioner</u>, T.C. Memo. 1980-205. Contrary to petitioner's view, respondent's contentions neither require inquiry into the sincerity of petitioner's religious beliefs nor cause entanglement with the "intricacies of petitioner's religious activity".

Petitioner contends that respondent is unconstitutionally burdening petitioner's free exercise of his religious beliefs and has violated RFRA sec. 3, 107 Stat. at 1488-1489, which provides in pertinent part:

**[*41]**        (a) In General.--Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

        (b) Exception.--Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--

        (1) is in furtherance of a compelling governmental interest; and

        (2) is the least restrictive means of furthering that compelling governmental interest.

Petitioner contends that disallowance of his section 170 deductions violates his right to the free exercise of religion by placing a substantial burden on his evangelization, in that it would result in his having less money to evangelize.  We disagree.  In Hernandez v. Commissioner, 490 U.S. 680, 699 (1989), the Supreme Court said that "we need not decide whether the burden of disallowing the § 170 deduction is a substantial one, for our decision in Lee establishes that even a substantial burden would be justified by the 'broad public interest in maintaining a sound tax system'".

Petitioner contends that the holding in Hernandez applies only to cases involving quid pro quo contributions and therefore does not apply here.  We disagree.  See Jimmy Swaggart Ministries v. Bd. of Equalization of Cal., 493 U.S. 378, 390-391, 394-396 (1990).  Petitioner also asks us to not follow Hernandez

**[\*42]** because, according to petitioner, the taxpayers (Scientologists) in <u>Hernandez</u> "were not practicing their religion." We decline to reach that conclusion, and we note that the Supreme Court did not draw such a conclusion. <u>See</u> <u>Hernandez v. Commissioner</u>, 490 U.S. 680.

> 2. <u>Respondent's Audits Did Not Unconstitutionally Discriminate Against Petitioner's Religious Beliefs</u>

Petitioner contends that respondent's three audits of his Federal income tax returns within 10 years resulted in excessive Government entanglement with his exercise of religion. We disagree. We do not look behind a notice of deficiency to examine the Commissioner's motives or the administrative policy or procedure involved in making the determination without credible evidence of unconstitutional conduct by the Commissioner. <u>Greenberg's Express, Inc. v. Commissioner</u>, 62 T.C. 324, 327 (1974). Petitioner has not provided a basis for us to conclude that the Commissioner unconstitutionally discriminated against his religious beliefs.

G. <u>Whether Petitioner Is Liable for the Addition to Tax Under Section 6651(a)(1) for Failure To File Timely</u>

An individual taxpayer is required to file a tax return on or before the 15th day of April following the close of the calendar year. Sec. 6072(a). However, a taxpayer can obtain an automatic six-month extension of time for filing a return,

**[*43]** see sec. 6081; sec. 1.6081-4, Income Tax Regs., by filing an application on Form 4868, sec. 1.6081-4(b)(1), (2), and (3), Income Tax Regs. Petitioner's 2012 tax return was due on April 15, 2013, but he filed a Form 4868 to obtain an extension to file his return. Petitioner filed his 2012 tax return on August 16, 2014, 10 months after the extended due date.

Section 6651(a)(1) imposes an addition to tax of up to 25% for failure to file timely Federal income tax returns unless the taxpayer shows that such failure was due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985).

The Commissioner bears the burden of production with respect to the taxpayer's liability for penalties and additions to tax. Sec. 7491(c). Once this burden is met, however, the burden shifts to the taxpayer to show that the Commissioner's determination is incorrect. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Respondent has met this burden of production because petitioner filed his return after the extended due date.

To prove that he or she had reasonable cause, a taxpayer must show that he or she exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. See sec. 6651(a)(1); Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin.

[*44] Regs. Petitioner contends that he had reasonable cause to file late because he was concerned about meticulously substantiating his expenses based on his experience in prior audits.[11] We disagree. The task of carefully keeping records does not provide reasonable cause for late filing. Therefore, we sustain the additions to tax under section 6651(a).

## H.    Whether Petitioner Is Liable for the Accuracy-Related Penalty Under Section 6662

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) and (b)(2) for 2012 for un underpayment of tax attributable to a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Petitioner is not liable for the penalty under section 6662 if the record does not show that it was properly determined by respondent. See Graev v. Commissioner, 149 T.C. 485, 492-493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). In order to meet the burden of production for this

---

[11]See supra note 8. Respondent audited petitioner's returns for 2008, Oliveri v. Commissioner, T.C. Dkt. No. 14773-08S (filed June 16, 2008), and for 2010, Oliveri v. Commissioner, T.C. Dkt. No. 3494-11S (filed Feb. 11, 2011). Petitioner agreed in both of those cases that he had a deficiency in tax for those prior years.

[*45] penalty, respondent must show that there was written supervisory approval of the initial penalty determination.  See secs. 6751(b)(1), 7491(c); Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; Graev v. Commissioner, 149 T.C. at 492-493.  The record contains no evidence of the requisite supervisory approval for this penalty.  Thus, respondent did not meet the burden of production and petitioner is not liable for the accuracy-related penalty for 2012.  See Platts v. Commissioner, T.C. Memo. 2018-31; Ford v. Commissioner, T.C. Memo. 2018-8.

I.      Conclusion

Petitioner may deduct charitable contributions for 2012 to the extent stated above and is liable for the addition to tax under section 6651(a)(1).

Decision will be entered under

Rule 155.